583 P.2d 1360

Fred **GOLDSBERRY**, Appellant,

v.

Edward L. **HOHN**, Appellee.

No. 1 CA–CIV 3629.

Court of Appeals of Arizona, Division 1, Department C.

June 8, 1978.

Rehearing Denied July 28, 1978.

Review Denied Sept. 12, 1978.

an arbitration award of the State Bar of Arizona on a fee dispute between appellant, Fred Goldsberry, as the client, and appellee, Edward L. Hohn, as the attorney. The superior court denied confirmation and we affirm.

## BACKGROUND

On February 22, 1972 Goldsberry was seriously injured in a Santa Fe railroad accident. Without legal assistance, he subsequently negotiated with Santa Fe in an attempt to settle his claim for personal injuries under the Federal Employee's Liability Act. An offer by Santa Fe to settle for the sum of $15,000.00 was rejected and he thereafter retained Hohn on February 26, 1973 to represent him in future negotiations and in any litigation which might result from the prosecution of the claim. A written retainer agreement calling for payment of a one-third contingent fee was prepared by Hohn and executed by Goldsberry.

Hohn ultimately filed a complaint against Santa Fe in Maricopa County Superior Court in January 1974, and periodically thereafter Goldsberry made various advances to him for expenses. Eventually, however, Goldsberry became dissatisfied with Hohn and, after rejecting a settlement offer of $25,000.00 which Hohn had recommended that he accept, he discharged Hohn on July 4, 1974.

Hohn, however, continued negotiations with Santa Fe. Whether the retainer agreement remained in effect during this period was disputed by the parties. In any event, Hohn later accepted the $25,000.00 offer and mailed settlement documents and a joint pay settlement draft to an attorney in Winslow, Arizona, where Goldsberry resided, with a letter instructing Goldsberry to go to the office of the Winslow attorney

Hedberg & Kirschbaum by Joel R. Kirschbaum, Phoenix, for appellant.

Divelbiss & Gage by G. David Gage, Phoenix, for appellee.

## OPINION

WREN, Judge.

This appeal concerns an application filed pursuant to A.R.S. § 12–1511[1] to conform

1. A.R.S. § 12–1511 states:

"A party seeking confirmation of an award shall file and serve an application therefor in the same manner in which complaints are filed and served in civil actions. Upon the expiration of twenty days from service of the application, which shall be made upon the party against whom the award has been made, the court shall enter judgment upon the award unless opposition is made in accordance with § 12–1512."

and execute the documents. Goldsberry followed these instructions with the understanding that any attorney's fees to be paid Hohn would be arbitrated by the State Bar Association.

A petition for arbitration was later submitted by Goldsberry to the State Bar. Following acceptance of the matter for arbitration the State Bar forwarded the petition to Hohn on September 17, 1974, together with a copy of the Rules of the Committee of the State Bar on Arbitration of Fee Disputes, and an Agreement to Arbitrate for execution by Hohn. Instead of responding to the petitioner, however, Hohn filed his own petition for arbitration, to which he attached exhibits. A copy of the Hohn petition was then forwarded to Goldsberry who signed and returned it. The matter was then set for arbitration on Hohn's petition.

Ultimately, three attorneys were appointed by the State Bar Association to serve as arbitrators of the dispute. A hearing was held on November 22, 1974; testimony was taken, and documentary evidence including letters, expenses, claims, cancelled checks and the disputed retainer agreement were submitted into evidence. Hohn also presented his entire file relative to the underlying claim against Santa Fe.

At the hearing it was agreed by the parties that the arbitrators could examine the Maricopa County Superior Court file on the litigation, and that one of the arbitrators would interview a representative of Santa Fe to determine whether Goldsberry had in fact been offered a firm sum in settlement of his claim prior to the retention of Hohn as his attorney. Following the hearing, Hohn submitted further evidence of the time allegedly spent in representing his client, which was to be added to the time slips already before the arbitrators. Goldsberry disputed the additional evidence and more letters on the issue were submitted by each party.

As agreed, one of the arbitrators examined the superior court proceeding and an-

other, by telephone, interviewed Kent Turley, an attorney for Sante Fe. During this interview Turley confirmed the prior offer of $15,000.00 made by Santa Fe directly to Goldsberry. However, the conversation continued and the two men also discussed the matter of Hohn's representation generally.

The arbitration again convened, more evidence was introduced and ultimately an award in the amount of $3,500.00 was agreed upon by the arbitrators on January 16, 1975. Hohn was dissatisfied and presented to the Arbitration Board an "Application to Modify Award and/or Motion for Rehearing—New Trial," dated February 7, 1975. This application was denied and on August 8, 1975 Goldsberry applied to the superior court for an order confirming the arbitrators' award. Hohn opposed the application and, following denial by the court of cross-motions for summary judgment, the matter went to trial on the following issues:

1. Whether the conversation between one of the arbitrators and Turley required the setting aside of the entire award; and

2. Whether the arbitrators exceeded their power in making an award fixing attorney's fees on the basis of quantum meruit after deciding that the fee agreement was invalid.

The trial court thereafter made findings of fact and conclusions of law, and on August 5, 1976 entered a judgment denying confirmation of the award and remanding the matter for a new hearing before new arbitrators on the sole issue of the validity and the enforceability of the written retainer agreement. It left the quantum meruit issue to be decided, if necessary, by "such further proceedings as the parties may elect."

■ The pivotal issue for our resolution is whether the trial court correctly determined that the conversation between one of the arbitrators and Turley went beyond the

parameters of the query agreed to by the parties and the arbitrators. On this point the court found:

> "Mr. Turley and Mr. Oeser [the arbitrator] proceeded to discuss factual matters relating to the quantum meruit value of Mr. Hohn's services and the propriety of the fee agreement under the circumstances of the case . . .. This conversation dealt with matters and issues which went to the very foundation of the award ultimately rendered by the arbitrators.
>
>     . . .
>
> The Court wishes to emphasize that it does not for one moment question Mr. Oeser's integrity; however, the Court does firmly believe that fundamental fairness, or if you prefer, a denial of due process, requires that the arbitration award not be affirmed."

Goldsberry, relying on a quotation from an annotation in 47 A.L.R.2d 1362, urges that since Mr. Oeser testified that the additional conversation had no influence on his final decision, and that, since he did not divulge the additional information to the other two arbitrators, the error, if any, was harmless since it did not prejudice the award. The quotation relied upon states:

> "It may be noted that it is generally agreed that the test of whether an arbitrator's consultation with an outsider requires vacation of the award is whether such consultation had an undue influence upon the decision reached by the arbitrator and his colleagues." Annot., 47 A.L.R.2d 1362, 1363 (1956).

Under A.R.S. § 12–1512(A)(1) the superior court must decline to confirm an arbitration award if there is an adequate showing that the award was procured by "undue means". In our opinion the evidence supports the trial court's determination that the arbitrator's contact with Mr. Turley was impermissible under the rules of arbitration and tainted the deliberation proceedings.

The following excerpt from Turley's testimony is supportive of this conclusion:

> "I believe he [Oeser] indicated that if that, in view of the work product that he was aware of and in view of what I think I told him of what I knew of the work product, there was no way that a $8,300 fee could be reasonable. I think he asked that and I think that was about my response.
>
> *    *    *    *    *    *
>
> "As corrected by myself on the affidavit, I do believe that he said that the agreement was probably unconscionable with that amount of work, and I think I agreed with him at that point.
>
> *    *    *    *    *    *
>
> "And then I think I told him I didn't see how, after he indicated that Mr. Hohn had claimed 150 hours, I don't see how he could claim that.
>
> Q. What was his response to that?
>
> A. I think it was basic agreement."

Since the issue might well rise again in further arbitration, we turn next to the question of the quantum meruit value of the services rendered. Goldsberry contends that the parties' agreement for arbitration included submitting to arbitration the question of the proper fees to be awarded in the event that the retainer fee agreement was found invalid by the arbitrators. In support of this argument he cites to Rule 5B of Arbitration of Fee Disputes, which states in part:

> "The Award shall include a determination of all questions submitted to the panel or sole arbitrator, *the decision of which shall be necessary to resolve the controversy*." (Emphasis added.)

Hohn asserts that the only issue raised in his petition was whether the fee agreement was valid; and that the arbitrators exceeded their authority under A.R.S. § 12–

1512(A)(3) [2] when they made an award of attorney's fees based on quantum meruit.

As to the scope of the submission Goldsberry admits that the validity of the contingent fee arrangement was the primary subject of the arbitration agreement and the only issue specifically asserted in Hohn's petition. He urges, however, that the reasonable value of the legal services rendered was also submitted. He points out that both parties, without objection, presented evidence on the quantity, nature and value of Hohn's services and that Hohn therefore waived any objection to the quantum meruit award since the evidence was obviously submitted so that the arbitrators could determine the *reasonable* value of the services rendered. The trial court, as noted, rejected this view and remanded the matter for arbitration only with respect to the validity and enforceability of the retainer agreement. We reluctantly agree.

A review of the record reflects that it is unclear as to whether evidence on the value of Hohn's services was introduced on the issue of the work performed under the contingent one-third fee arrangement or the quantum meruit value of the services rendered in the event the agreement was declared to be unenforceable. The evidence could obviously be relevant to either issue. Moreover, Hohn's petition and his testimony at trial support the court's decision that the arbitration board should have restricted its inquiry to the validity of the agreement and the one-third fee. Arbitrators may not exceed their authority by deciding issues not submitted to them. *Snowberger v. Young,* 24 Ariz.App. 177, 536 P.2d 1069 (1975).

It is obvious, of course, that the trial court's decision places Hohn in an "everything to win and nothing to lose" position. Clearly he is entitled to *some* fee. If the retainer agreement is declared valid then the fee could be fixed according to its terms. If found invalid, Hohn could proceed to collect a *reasonable* fee based on quantum meruit in some other proceeding. The additional arbitration might therefore accomplish nothing. Since the object of arbitration is to finally dispose of differences between parties in a speedier and less expensive manner than normal court proceedings, 6 C.J.S. Arbitration § 2, (1975), such a result flies in the face of its whole purpose, and would only add to the time consuming and expensive role required by the court adjudication; a result entirely antithetical to the objectives of the arbitration concept. *See Smitty's Super-Value, Inc. v. Pasqualetti,* 22 Ariz.App. 178, 525 P.2d 309 (1974).

The preferable course of the additional arbitration procedure in the event the fee arrangement between the parties is again struck down, would be for the parties to place before the arbitrators the power to resolve the obvious ultimate question of the dispute—the amount of the fee to be awarded.

Judgment affirmed.

DONOFRIO and OGG, JJ., concur.

**2.** A.R.S. § 12–1512(A)(3) states:

"A. Upon filing of a pleading in opposition to an award, and upon an adequate showing in support thereof, the court shall decline to con-

firm and award and enter judgment thereon where:

\* \* \* \* \* \*

3. The arbitrators exceeded their powers; "