672 P.2d 1322

Clarence R. PAYNE and Mary Payne, husband and wife, Plaintiffs/Appellants,

v.

PENNZOIL CORPORATION, a corporation; Duval Corporation, a corporation; C.O. Gracey; Jessie Romero; and J.W. Fortson, Defendants/Appellees.

No. 2 CA–CIV 4670.

Court of Appeals of Arizona, Division 2.

June 6, 1983.

Rehearing Denied Oct. 3, 1983.

Review Denied Dec. 6, 1983.

Robert Q. Hoyt and Edwin B. McLean, Tucson, for plaintiffs/appellants.

Bilby, Shoenhair, Warnock & Dolph, P.C. by John A. Robertson, Tucson, for defendants/appellees.

OPINION

BIRDSALL, Judge.

The trial court granted the appellees' motion to dismiss Count One of the appellants' complaint as to the appellees C.O. Gracey, Jessie Romero and J.W. Fortson and Count Three which was directed only against the appellees Pennzoil Corporation and Duval Corporation. The motion to dismiss was based on lack of subject matter jurisdiction and failure to state a claim. Rule 12(b), Arizona Rules of Civil Procedure, 16 A.R.S. The appellees filed two affidavits in support of their motion. No objection appears to have been made,

and the court did not exclude the affidavits, but in fact considered them. Therefore the disposition was in the nature of summary judgment. *Partin v. Olney,* 121 Ariz. 448, 591 P.2d 74 (App.1978). The judgment contained Rule 54(b), Arizona Rules of Civil Procedure, 16 A.R.S. direction, and this appeal followed.

The appellant Clarence Payne was an employee of the appellee Duval. The appellee Gracey was the labor relations supervisor, the appellee Romero was the senior safety supervisor and the appellee Fortson was the industrial relations superintendent at the Duval mine where Clarence Payne was employed. The complaint alleges that the mine was owned and operated jointly by Duval and Pennzoil. The two companies deny that Pennzoil was so involved.

Count One of the complaint alleged that these three employees and other defendants wrongfully interfered with Payne's employment contract. In that count the appellants claimed that Clarence was injured on the job resulting in a claim for workmen's compensation; that the three individual appellees, and others, performed secret surveillance of his activities after his injury which eventually resulted in his discharge.

Count Three was for wrongful termination of his employment contract. The appellants alleged that Clarence had suffered two industrial injuries, one being the injury in Count One, and because of his two resulting compensation claims the employer fired him.

The motion to dismiss and the accompanying affidavits show that there was a collective bargaining agreement in existence at the mine whereby the United Steelworkers was the sole and exclusive representative of the employees for matters included therein. By virtue of this agreement Payne could be discharged only "for just cause" whereas otherwise, without the agreement, his employment would be "at will". The agreement further provided for a grievance committee and a procedure for settlement of disputes between the company and the covered employees. If no settlement was achieved differences were to be submitted to arbitration. The arbitration rules made the arbitration decision final. Where the discharge of an employee, as here, was alleged to be without just cause, the preliminary steps in the grievance procedure could be eliminated.

The appellants contend on appeal:

1) that the termination involved here was not a matter included within the collective bargaining agreement,

2) that the handling of the grievance warranted exceptions to the submission of the matter to arbitration, and

3) that the trial court erred in dismissing Count One as to the three appellees for the reason given. In this regard the court's under advisement minute entry ruling contains the following:

"However, inasmuch as the employers and the named employees, Gracey, Romero and Fortson, are represented by the same counsel and no conflict has been alleged by them, the Court can assume that they were acting within the scope of their authority and that they, therefore, cannot be held for tortious interference with contractual relations."

We affirm.

### The Discharge

■ The appellants allege that Payne was discharged for pursuing his constitutional and statutory rights to compensation for his industrial injuries. *See* Ariz. Const. Art. XVIII, §§ 3,[1] 7 and 8; Employer's Liability Law, A.R.S. § 23–801, et seq.;

1. "It shall be unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability or responsibility on account of personal injuries which may be received by such servants or employees while in the service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees thereof; and any such contract or agreement if made, shall be null and void."

Workmen's Compensation Law, A.R.S. § 23–901, et seq. and in particular A.R.S. § 23–907. For that reason they assert that the arbitration provided under the collective bargaining agreement should not be exclusive. They argue that the appellees' action was retaliatory and against public policy. They contend (1) that an agreement to submit all disputes that may arise to arbitration cannot oust the court of jurisdiction absolutely, citing *Gates v. Arizona Brewing Co.,* 54 Ariz. 266, 95 P.2d 49 (1939) and *Fineg v. Pickrell,* 81 Ariz. 313, 305 P.2d 455 (1956); (2) that the parties are bound to arbitrate only those issues which by clear language they have agreed to arbitrate, citing *Clarke v. Asarco, Inc.,* 123 Ariz. 587,

601 P.2d 587 (1979) and *State Farm Fire and Casualty Co. v. Rossini,* 14 Ariz. App. 235, 482 P.2d 484 (1971); vac'd on other grounds, 107 Ariz. 561, 490 P.2d 567; and (3) that arbitration may not resolve issues that go beyond the scope of the submission agreement, citing *Clark v. Asarco, Inc., supra; Goldsberry v. Hohn,* 120 Ariz. 40, 583 P.2d 1360 (App.1978) and *Allstate Ins. Co. v. Cook,* 21 Ariz.App. 313, 519 P.2d 66 (1974).

We are not persuaded that any of these reasons are applicable here. The agreement, at least by implication, makes an included employees' wrongful discharge a covered grievance.[2] An agreement contain-

2. In pertinent part the agreement provides:
Article I, Sec. 1(6) provides:
"(6) The Union having been designated the exclusive collective bargaining representative of the employees of the Company as defined in Article I, Bargaining Agency, Section 1, Recognition of Bargaining Agency, the Company recognizes the Union as such exclusive representative. Accordingly, the Union makes this Agreement in its capacity as the exclusive collective bargaining representative of such employees. *The provisions of this Agreement constitute the sole procedure for the processing and settlement of any claim by an employee* or the Union *of a violation by the Company of this Agreement. As the representative of the employees, the Union may process grievances* through the Grievance Procedure, including arbitration, in accordance with this Agreement or adjust or settle the same."
Article II, Secs. 1(1) & (2) provide:
"(1) All matters related to the Company, its operations and employment with or by the Company and the administration thereof, are exclusively within the jurisdiction of the Company and are not subject to Union action or consent or grievance or arbitration, except such matters of employment, rates of pay, wages, hours of employment, and other conditions of employment affecting the employer-employee relationship as are specifically provided for in the terms of this Agreement.
(2) The Company reserves all rights and prerogatives not specifically affected by this Agreement. These rights and prerogatives so reserved include, but are not limited to, the right to hire, to reprimand, to suspend, *or to discharge for just cause;* the right to prescribe the duties of employees and to otherwise direct the working forces; and the right to determine the methods and means by which operations are to be conducted; the right to direct the work force; the right to

introduce new or improved methods, equipment, or facilities; the right to extend, to limit, or to curtail operations; and the right to manage the operations."
Article II, Section 4(1) provides:
"(1) An employee who willfully violates any of the working rules shall be subject to reprimand, disciplinary action, or discharge as the Company shall determine, with the right of appeal to the grievance procedure only as to the determination of whether such employee did in fact willfully violate any of such working rules."
Article X, Section 1(1) provides:
"(1) A grievance is any controversy, complaint, misunderstanding, or dispute as to meaning, application, or observance of any of the provisions of this Agreement."
Article X, Section 8 provides:
"(1) In the event of the discharge or suspension of an employee which is alleged by the Union to be without just cause, the employee or the Union may within seventy-two (72) hours after the suspension or the discharge forego steps one (1) and two (2) of the grievance procedure and submit a grievance in writing directly to the Property Manager or his appointed representative.
(a) Upon receipt of the written grievance, the Property Manager or his appointed representative shall meet with the grievance committee within seventy-two (72) hours.
(b) After such meeting, the grievance shall be subject to the same procedures as any grievance at the Property Manager's level.
(2) If at the Property Manager's level or at arbitration it is found that the discharge or suspension was without just and sufficient cause, the employee will be reinstated. He may be paid the amount due to the employee based upon the number of days he had been idle as a result of the discharge or suspension less any wages earned from other employment or unemployment compensation re-

ing provisions for arbitration should be liberally construed with any doubt resolved in favor of the arbitration. *New Pueblo Const. Inc. v. Lake Patagonia Rec. Ass'n,* 12 Ariz.App. 13, 467 P.2d 88 (1970). Other courts have found an alleged retaliatory discharge covered by similar agreements. *See Cook v. Caterpillar Tractor Co.,* 85 Ill. App.3d 402, 40 Ill.Dec. 864, 407 N.E.2d 95 (1980); *Johnson v. Hydraulic Research and Manufacturing Co.,* 70 Cal.App.3d 675, 139 Cal.Rptr. 136 (1977).

The response of the parties and the union to Payne's discharge also convinces us that the agreement was intended to provide the procedure for remedying a wrongful discharge. The affidavit of appellee Gracey states, in part, that the union filed a grievance on Clarence's behalf alleging "wrongful discharge", that the company denied the grievance, and that the union later advised the company they would not arbitrate because the grievance was without merit. The construction that the parties themselves place on an agreement is indicative of its meaning. *Assoc. Students of the Univ. of Ariz. v. Ariz. Bd. of Regents,* 120 Ariz. 100, 584 P.2d 564 (App.1978), cert. denied, 440 U.S. 913, 99 S.Ct. 1226–27, 59 L.Ed.2d 462 (1979).

Payne contends that even if the discharge is covered by the agreement he should not be required to arbitrate. We disagree. *New Pueblo Constr. Inc., supra;* A.R.S. § 12–1501, et seq. The agreement provided for an exclusive remedy. It also expressly states that the decision of the arbitrator will be accepted as final. The U.S. Supreme Court has held that the employee must at least attempt to exhaust the exclusive procedures of a bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). *And see Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and *Clayton v. International Union, Etc.,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

The Supreme Court has permitted limited exceptions to the exhaustion requirement when an employee filed suit pursuant to a federal statute providing a statutory remedy for matters also covered by a collective bargaining agreement. *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (minimum wage and overtime claim covered by Fair Labor Standards Act); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39' L.Ed.2d 147 (1974) (discriminatory discharge covered by Federal Civil Rights Act); *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) (federal statutory right of seaman to collect wages). Count Three was properly dismissed because the collective bargaining agreement provided an exclusive remedy for resolution of the appellants' claim.

### Handling of the Grievance

■ The appellants argue that the union mishandled their grievance. The affidavit of appellee Gracey states, in part, that the union filed a grievance on Clarence's behalf alleging "wrongful discharge", that the company denied the grievance, and that the union later advised the company they would not arbitrate because the grievance was without merit. The union is not a party either here or in the trial court. Therefore, this argument is misdirected. In addition, there are neither allegations nor "evidence" to support the claims that the union mishandled the grievance.

### The Individual Appellees

■ The appellees do not even argue that the dismissal of the three Duval employees from Count One should be affirmed for the reason given by the trial court, i.e., that since they are represented by the same counsel and no conflict has been alleged, the court could assume they were acting within their authority and therefore they cannot be guilty of tortious interference with the employment contract. No authority is cited by anyone for this proposition and we reject it.

ceived by him or to be received by him for

the period involved." (emphasis supplied)

However, the appellees urge other reasons for affirmance. They refer us to the affidavit of M.H. Campbell, Duval's director of industrial relations which states that the three appellees were all acting within the scope of their authority as management representatives in matters involving Clarence Payne. They also call attention to an allegation in the complaint that Duval, acting through Gracey, Romero and Fortson, terminated the contract. From these references they argue that since the three employees were acting *for* the company, they cannot be interfering with a contract *of* the company. They rely on *Ulan v. Vend-A-Coin, Inc.,* 27 Ariz.App. 713, 558 P.2d 741 (1976) wherein the court discussed the traditional elements of the tort of wrongful interference. The contract must be one between the plaintiff and a third party. The appellees argue that since they were acting for Duval they were Duval, and that they could not interfere with their own contract. We agree. The appellants filed no controverting affidavits. There was nothing before the trial court creating any dispute or conflict. Although we do not agree that the trial court could assume their acts were for the company solely because they are represented by the same counsel, the trial court could very properly conclude that they were acting within the scope of their employment from the pleadings and affidavits. Since the appellants have not controverted the facts contained in the affidavits, *Insurance Agencies Co. v. Weaver,* 124 Ariz. 327, 604 P.2d 258 (1979), the trial court could accept them as true.

We hold that the trial court properly dismissed appellees Gracey, Romero and Fortson as defendants on Count One.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.