**Darryleen J. KELLEY, Plaintiff,**

v.

**The CITY OF MESA, a body politic; Charles Luster, City Manager, and Jane Doe Luster; Guy Meeks, Chief of Police, and Jane Doe Meeks; Lars Jarvie, Captain, Mesa Police Department, and Jane Doe Jarvie; Olga Flores, C.I.D. Records Supervisor, Mesa Police Department and John Doe Flores, Defendants.**

**CIV–91–0034–PHX–RGS.**

United States District Court, D. Arizona.

Mar. 12, 1994.

Richard Kelly Hocker, Law Offices of R. Kelly Hocker, Tempe, AZ, for plaintiff Darryleen J. Kelley.

John Alan Doran, Streich Lang, P.A., David A. Selden, Steptoe & Johnson, Phoenix, AZ, for defendants City of Mesa, AZ, a body politic, Charles K. Luster, City Manager, Ellen Luster, Guy Meeks, Chief of Police, Doris Meeks, Lars Jarvie, Captain, Mesa Police Dept., Ruth Jarvie, Olga Flores, C.I.D. Records Supervisor, Mesa Police Dept., John Does I–X, Jane Does I–X, John Doe Flores.

## ORDER

STRAND, District Judge.

Plaintiff, Darryleen Kelley, was employed by the City of Mesa ("the City") beginning in July of 1979. The City initially hired her as a Dispatcher I. In 1986, Plaintiff was transferred to the Criminal Investigations Division as a Police Service Officer. Plaintiff's job title was later changed from Police Service Officer to Police Investigative Assistant. Plaintiff's job required contact with police officers located in the City's Main Police Building. The files to which she was assigned were also located in the Main Police Building.

Beginning in 1988, the City began a construction and remodeling project of the Main Police Building. The first phase of the construction involved adding two floors to the original structure, and the second phase involved remodeling the three original floors. The project took longer than expected. The first phase was completed in October of 1989. At the time of Plaintiff's termination in November of 1989, it was believed the second

phase would begin in a year and last for 12–18 months.

According to Plaintiff's complaint, on June 1, 1989, she suffered an industrial injury at the Main Police Building when she was exposed to construction solvents and chemicals emanating from the construction and remodeling project. Plaintiff filed a worker's compensation claim for the alleged June 1, 1989 exposure. On June 2, 1989, Plaintiff worked at the Falcon Field substation. On June 5, 1989, Plaintiff returned to work at the Main Police Building. On June 6, 1989, Plaintiff claimed to fall ill from chemical fumes in the Main Police Building and went home sick. Plaintiff was out sick from June 7, 1989 through June 30, 1989. On August 1, 1989, Plaintiff returned to work and was relocated to the Falcon Field substation. On August 2, 1989, while stationed at the Falcon Field substation, Plaintiff complained that she was exposed to paint fumes. While at the Falcon Field substation, Plaintiff, at her doctor's request, was placed on a reduced hours schedule in which she worked two eight-hour days per week and three four-hour days per week. On September 20, 1989, Plaintiff claimed she was exposed to bug spray being applied at the Falcon Field substation. On September 20, Captain Jarvie called Plaintiff and told her that her worker's compensation claim for the June 1, 1989 exposure had terminated and that future absences would be charged to Plaintiff's sick time and dock time. Captain Jarvie further explained that continued absences could not be tolerated in light of department needs. Plaintiff was told that her failure to return to work could result in termination.

Plaintiff never returned to work after September 20, 1989. November 13, 1989, is the date of the written notice of Plaintiff's termination. Plaintiff filed this action in Superior Court on December 3, 1990. Defendants, the City and several individuals in the Mesa Police Department, removed this action to federal court and now bring this Motion for Summary Judgment.

## COUNT I: VIOLATION OF THE ARIZONA CIVIL RIGHTS ACT

Plaintiff alleges that her susceptibility to paint and certain chemicals qualifies her as a "handicapped person" under A.R.S. § 41–1461(7). Plaintiff alleges that Defendants had knowledge of her handicap and refused to make reasonable accommodations for her, refused to hire her for other positions for which she was qualified, and otherwise discriminated against her because of her handicap.

■ A.R.S. § 41–1463(B) prohibits discrimination in employment based on an individual's handicap. The statute defines "handicap" as

a physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment except ... (b) any impairment or condition to which § 23–1044, subsection A [dealing with temporary partial disability] or § 23–1045, subsection A [dealing with temporary total disability] applies.

A.R.S. § 41–1461. Defendants contend that Plaintiff's allergies to paint and certain chemicals are a temporary disability covered by worker's compensation. Defendants cite *Lorentzen v. Industrial Commission of Arizona*, 164 Ariz. 67, 790 P.2d 765 (App.1990) in support of their argument. That case is inapposite. In that case the court held that a teacher who had been exposed to pesticides to which she was allergic suffered an injury "by accident" rather than an occupational disease and therefore was entitled to worker's compensation. The court did not determine whether her injury resulted in temporary or permanent disability under the statute.

Defendants also point to the fact that Plaintiff filed a claim for the June 1, 1989 incident. Plaintiff's deposition, p. 95. According to the Notice of Claim Status form, temporary compensation for this claim was terminated on September 11, 1989, and it was determined that this injury resulted in "no permanent disability." Defendants' Exhibit 6. Plaintiff did not appeal this ruling. Plaintiff's deposition, p. 297–8.

Plaintiff responds by arguing that the reference to the Worker's Compensation Act in § 41–1461 means that "so long as an employee is on worker's compensation, the employee is not considered to be a 'qualified' employee.

It does not mean that the worker is not handicapped. Once the employee is no longer on compensation, then she is a qualified employee if she meets the other criteria." Plaintiff's Response, p. 22. Plaintiff relies on Sections I and XIII of the Handicap Guidelines for the Civil Rights Division (the "Guidelines"), which provide:

> I—The handicap statute does not require that a disability be permanent. It must be determined whether the particular disability substantially restricts an individual's general ability to secure, retain, or advance in employment.

> XIII—The Division will not permit the filing of a charge if the prospective Charging Party is eligible to receive Temporary Worker's Compensation benefits pursuant to A.R.S. §§ 23–1044–23–1045 at the time the alleged handicap discrimination occurred, *or* is eligible to receive such benefits at the time of the attempted filing of the charge. (emphasis in original)

Plaintiff's Exhibit 1. There's no dispute that Plaintiff filed a claim for Worker's Compensation and that Plaintiff's claim was treated by the Industrial Commission as a temporary disability. However, there is no evidence that Plaintiff was eligible to receive worker's compensation at the time she was discriminated against. As Plaintiff's deposition testimony makes clear, she was fired after she stopped receiving worker's compensation for the June 1, 1989 injury. Also, there is no evidence that Plaintiff was eligible for worker's compensation at the time she filed this lawsuit.

■ Defendants also argue that Plaintiff is not "handicapped" under the statute because her allergies do not "substantially restrict or limit" Plaintiff's "general ability to secure, retain or advance in employment." Defendants argue that Plaintiff claims that her handicap caused difficulty in working only at the Main Police Building due to construction. However, from her deposition it appears that as a result of her exposures on June 1, 1989 and August 2, 1989, Plaintiff experienced difficulties that would have prevented her from working anywhere—not just at the Main Police Building. Plaintiff testified at her deposition that as of September or October of 1989, her ability to perform manual tasks was impaired, she experienced extreme fatigue, her ability to walk and breathe was impaired, and she experienced pain in her ears. Plaintiff's deposition, pp. 288–291. Thus, there is a genuine issue of material fact as to whether Plaintiff's general ability to secure employment was impaired.

■ There is also a genuine issue of material fact as to whether Plaintiff is a "qualified handicapped individual." It is unlawful for an employer to discharge a "qualified handicapped individual" because of that individual's handicap. A.R.S. § 41–1463(B)(1), (M). A "qualified handicapped individual" is an individual with a handicap who with reasonable accommodation is capable of performing the essential functions of the particular job in question within the normal operation of the employer's business in terms of physical requirements, education, skills and experience. A.R.S. § 41–1461(7). "Reasonable accommodation" means an accommodation which does not unduly disrupt or interfere with the employer's normal operations, threaten the health or safety of the handicapped individual or others, contradict a business necessity of the employer, or impose undue hardship on the employer based on the size of the business, the financial resources of the employer and the estimated cost and extent of the accommodation. A.R.S. § 14–1461(8).

Defendants contend that Plaintiff could not be reasonably accommodated. Plaintiff claims that the City could have accommodated her by (1) granting her request for a leave of absence to give her time to see if her medical treatments worked; (2) allowing her to work at Falcon Station; (3) moving her into some other area of employment with the City; (4) giving Plaintiff some options before they made their decision; and (5) and being more flexible with her hours and the place she worked. Plaintiff's deposition, pp. 209–10. The burden is on the employer to prove the inability to accommodate. Guidelines Section III, Plaintiff's Exhibit 1. Clearly, Defendants were not required to do some of the things that Plaintiff contends they should have done. For example, under Section IV of the Guidelines, an employer is not required to transfer a handicapped employee

from one job to another having different duties. However, a fact-finder may find that it would have been a reasonable accommodation to allow Plaintiff to work at Falcon station. For example, although Defendants contend that a requirement of Plaintiff's job was interaction with Police Officers at the Main Police Building, Plaintiff in her affidavit states that she did not interact with her first line supervisor or with members of the Criminal Assault Detail on a daily basis. Thus there is an issue of fact as to whether Plaintiff's job required her to work in the Main Police Building so that moving her to Falcon Station would not be a reasonable accommodation. Defendants, having the burden at trial, have failed to show that the finder of fact could only find in their favor on the issue of whether Defendants could have reasonably accommodated Plaintiff's handicap. Thus, Defendants are not entitled to summary judgment on this count.

## COUNT II: TERMINATION IN VIOLATION OF PUBLIC POLICY (DISCRIMINATION)

■ Plaintiff claims she was terminated because of her handicap in violation of Arizona's policy against discrimination toward the handicapped. Defendants argue that because Plaintiff does not meet the statutory definition of "handicapped," her claim that she was wrongfully discharged because of her "handicap" in violation of the public policy embodied in the Arizona Civil Rights Act must also fail. First, as previously discussed, there is a genuine issue of material fact as to whether Plaintiff meets the statutory definition of "handicapped." Second, even if she does not, the Court believes that this fact alone would not preclude Plaintiff from successfully maintaining an action for wrongful termination.

■ Plaintiff cites *Broomfield v. Lundell*, 159 Ariz. 349, 767 P.2d 697 (App.1988). In that case, the court held that the Arizona Civil Rights Act does not preempt a tort action for wrongful discharge. Accordingly, a common law tort claim for wrongful discharge is a separate and distinct cause of action. As the court explained

Our state legislature in enacting the Arizona Civil Rights Act has clearly established a public policy against employment discrimination. Although the Act provides administrative and judicial remedies for employment discrimination, these remedies may, at times, prove to be inadequate. We hold that the Arizona Civil Rights Act does not preempt a tort action for wrongful discharge.

*Id.,* 159 Ariz. at 357 at 705. Based on the Arizona Supreme Court's recognition of the fact that the remedies provided by the statute may sometimes be inadequate, there is no reason to believe that a plaintiff is limited to bringing a suit for wrongful termination only when the Plaintiff fits exactly into one of the protected categories recognized in the statute.

■ Defendants also claim that this count is barred by the one year statute of limitations for actions arising under statute. In *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991), the Ninth Circuit affirmed the District Court's finding that wrongful termination claims in Arizona are barred by the two-year statute of limitations set forth in A.R.S. § 12–542. Plaintiff filed her complaint within two years of her termination and, thus, Count II is not barred by the statute of limitations.

## COUNT III: TERMINATION IN VIOLATION OF PUBLIC POLICY (RETALIATION FOR USE OF INDUSTRIAL BENEFITS)

Plaintiff alleges that she was terminated in violation of public policy because she was terminated for filing and/or claiming industrial benefits.

Defendants claim, first, that Plaintiff's claim is barred by the one-year statute of limitations for actions arising under statute. For the reason explained above, this argument fails.

■ Defendants next claim that there is no evidence that Plaintiff was discharged for filing an industrial injury claim or for using industrial time. The moving party must produce evidence establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The absence of

a genuine issue of material fact may be demonstrated by pointing out to the district court that "there is an absence of evidence to support the nonmoving party's case" on issues where the nonmoving party bears the burden of proof. *Id.,* 477 U.S. at 325, 106 S.Ct. at 2554.

Defendants point to the fact that in her deposition, Plaintiff repeatedly refused to provide any reasons why she believed her termination was due in part to her use of industrial time. *See* Plaintiff's deposition, pp. 264–266. Furthermore, Plaintiff admitted in her deposition that (1) she was never reprimanded for filing the June 1, 1989 industrial injury claim; (2) no one ever told her they were upset with her for filing the claim; and (3) someone from the City encouraged her to fill out the industrial injury claim for that particular incident. Plaintiff's deposition, p. 260–1.

 Plaintiff's only evidence in response to Defendant's argument is that the City's compensation trust fund was severely depleted in the 1988–1989 fiscal year, and, from that fact, the jury could conclude that the city was unlawfully eliminating potential future claims. Plaintiff's Exhibit 5. At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but merely to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the non-moving party will bear the burden of proof at trial as to any element essential to its case, that party can withstand a motion for summary judgment only by making a showing sufficient to establish a genuine issue of fact regarding that element and a showing that the dispute properly may be resolved only by the fact-finder because it could reasonably be resolved in favor of either party. *Celotex Corp.,* 477 U.S. at 321, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

 In order to make such a showing, the party opposing the motion must present specific facts in support of its contentions and must support these facts by proper evidentiary material, which when coupled with undisputed background and contextual facts, show

that the fact-finder could reasonably find in his favor. Fed.R.Civ.P. 56(e). *See also T.W. Elect. Service, Inc. v. Pacific Elect. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987) (citations omitted). The Court finds that Plaintiff has not presented evidence sufficient that a fact finder could reasonably find in her favor. Consequently, summary judgment shall be entered in favor of Defendants with regard to Count III.

## COUNT IV: BREACH OF CONTRACT

Plaintiff alleges that the City breached its contract with Plaintiff by

(1) failing to accommodate Plaintiff's handicap;

(2) disciplining her because of her handicap;

(3) terminating her without providing counseling and/or progressive discipline;

(4) terminating her for utilizing industrial leave, sick leave, vacation leave and dock time;

(5) refusing to transfer her to another department;

(6) refusing to put her on light duty status according to its policy and practice;

(7) terminating her for a reason not identified in its policies and procedures;

(8) not taking steps to stop the discrimination against Plaintiff; and

(9) failing to provide assistance in locating employment within the City that would accommodate her specific handicap.

 The City first argues that Plaintiff's contract claims are subject to an "abuse of discretion" standard of review by this Court. The City points to the fact that Plaintiff appealed her termination to City of Mesa Personnel Appeals Board, which upheld her termination. The City argues that because the actions the City took or did not take constitute administrative determinations, the Court, if it can review these claims at all, must review them under an "abuse of discretion" standard. Defendants rely on *Woerth v. City of Flagstaff,* 167 Ariz. 412, 808 P.2d 297 (App.1990). In that case, the plaintiff, a Flagstaff firefighter, was fired for using cocaine and supplying it to other firefighters.

He appealed to the Flagstaff Personnel Board, which, after an evidentiary hearing, affirmed his dismissal. On appeal, both parties agreed that there was an employment contract whereby the plaintiff could only be fired for good cause. The plaintiff argued that the trial court erred in applying an administrative review standard to the Board's factual findings and to its determination that cause existed for the firing. The court of appeals disagreed and held that the trial court correctly reviewed the claim under an abuse of discretion standard.

The present case may be distinguished because in *Woerth* the court was *reviewing* a board's determination of whether there was just cause to fire the plaintiff. With the possible exception of allegations (4) and (7) above, Plaintiff in this case is not asking the Court to review the Board's decision to fire her. Rather, Plaintiff is claiming that the City breached its contract with her in ways other than firing her. There is no evidence that the Board ever considered these breach of contract issues. With regard to allegations (4) and (7), the Defendants have not shown that these issues were considered by the Board by citing to the record. Thus, this Court is not required to review these claims under an abuse of discretion standard.

■ Second, the City argues that "there is no contractual obligation by the City to Plaintiff related to non-discriminatory or non-retaliatory treatment." Defendants point to Plaintiff's deposition testimony that the documents that constituted her employment contract were (1) the oath she signed; (2) a beneficiary form she signed; and (3) a W–2 form. Plaintiff responds by citing to the Personnel Rules and Regulations of the City of Mesa in effect prior to March 20, 1989, the Personnel Rules for the City of Mesa, effective March, 1989, and the City of Mesa Employee Handbook, revised in the spring of 1988. Plaintiff's Exhibits 2–4. Such rules may provide a basis upon which Plaintiff can argue that the City promised, as part of her employment contract not to discriminate against her. *See e.g. Tuttle v. ANR Freight System, Inc.,* 797 P.2d 825, 827 (Colo.App.1990). Furthermore, whether an employer and employee have entered into a contract based on an employee handbook is generally a question of fact for the jury. *Id.* Thus, summary judgment on this claim is inappropriate.

## COUNT V: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

■ In Count V of her complaint, Plaintiff alleges that the City had a duty to act in good faith and to deal fairly with her and that the City breached that duty. Arizona recognizes an implied covenant of good faith and fair dealing in the employment-at-will situation. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 385, 710 P.2d 1025, 1040 (1985). Although that covenant does not create a duty for the employer to terminate the employee only for good cause, it does protect an employee from discharge based on an employer's desire to avoid the payment of benefits already earned by the employee. *Id.*

■ Defendants contend they are entitled to summary judgment because Plaintiff fails to provide evidence that she was fired because of a desire to avoid paying her earned benefits. Defendants point to Plaintiff's deposition testimony where she admits that the City did not deprive her of any benefits that she had already earned. *See* Plaintiff's deposition, p. 377–378.

Plaintiff states in her response that "There is little doubt that plaintiff was terminated for use of earned sick leave and compensation benefits." However, Plaintiff does not assert specific facts in support of its contention and does not cite proper evidentiary material as required by Fed.R.Civ.P. 56(e). *See also T.W. Elect. Service, Inc. v. Pacific Elect. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987) (citations omitted). Furthermore, the covenant of good faith and fair dealing does not protect Plaintiff from being fired for using benefits, but rather prevents her from being fired in order to preclude her from using earned benefits. Consequently Defendants are entitled to summary judgment on this count.

## COUNT VI: DENIAL OF EQUAL PROTECTION

 Plaintiff's complaint alleges in cursory fashion that Defendants denied Plaintiff equal protection of the law as guaranteed by the Fourteenth Amendment. Plaintiff alleges in her Response two grounds for her equal protection claim. First, Plaintiff alleges that she was denied the equal protection of the law because of her handicap. Handicap status is not a suspect classification for equal protection purposes.[1] *See California Assoc. of the Physically Handicapped, Inc. v. FCC,* 721 F.2d 667, 670 (9th Cir.1983). Thus, state action involving handicapped employees is only subject to a rational basis test. *Id.*

 In order to make a *prima facie* case of discrimination in violation of the equal protection clause, a plaintiff must offer evidence that "gives rise to an inference of unlawful discrimination." *Sischo–Nownejad v. Merced Community College District,* 934 F.2d 1104, 1110 (9th Cir.1991). The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a *prima facie* case is "very little." Plaintiff, however, provides no evidence from which it could be inferred that she was discriminated against other than the fact that she was fired and that she is "handicapped." For example, she does not claim that any statements were made from which it could be inferred that she was fired because of her handicap. Plaintiff also does not provide any statistics from which a fact-finder could infer that the City was firing handicapped individuals at a disproportionate rate.

This Court believes that Plaintiff must provide some evidence other than the fact of a firing and membership in a group to make out a prima facie case of discrimination in violation of the equal protection clause. Plaintiff does not cite any case law supporting the proposition that the mere fact of the firing of a member of a particular group, by itself, is sufficient evidence to survive a motion for summary judgment. Because Plaintiff has failed to meet her burden of establishing a prima facie case of an equal protection violation, Defendants are entitled to summary judgment on this claim.

 Plaintiff also argues that she was denied equal protection of the law because she, an unsworn employee, was treated differently than sworn personnel. Plaintiff's sole evidence presented on this point is her deposition testimony, in which she stated that the City treats disabled sworn police officers differently from disabled unsworn civilian personnel and that she thinks had she been sworn personnel "they would have gone to much greater lengths to allow me time to get through this situation." Plaintiff's deposition, p. 300–301. No reasonable fact-finder could find for Plaintiff on the basis of this "evidence," and therefore Defendants are entitled to summary judgment on the equal protection claim based on Plaintiff's status as an unsworn employee.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 Count VII of Plaintiff's complaint simply states that "defendants have intentionally inflicted severe emotional distress upon Kelley." Defendants contend they are entitled to summary judgment on this count because Plaintiff is unable to identify any facts supporting her claim that she has experienced emotional distress. Defendants point to Plaintiff's answer to Defendants' Interrogatory # 7 in which Plaintiff states "At the present time, plaintiff does not have any direct evidence of intentional infliction of emotional distress." Defendants' Exhibit 14. Defendants also point to the fact that in her deposition, Plaintiff was unable to provide any evidence supporting her claim that Defendants intended to harm her. When asked whether she believed Captain Jarvie intended to harm her when he recommended her termination, Plaintiff responded "No." Plaintiff's deposition, p 379. When asked whether she had any reason to believe Sergeant Felger intended to harm her, Plaintiff answered "No." Plaintiff's deposition, p. 381.

---

1. It is possible that, after the passage of the Americans with Disabilities Act, handicapped status is a suspect classification. However, the statute was passed after the events complained of here occurred, and Plaintiff has failed to cite any published authority recognized by this Court that would suggest that this Court should apply a higher level of scrutiny in this case.

Plaintiff in her response does not provide any evidence supporting her claim for intentional infliction of emotional distress. In fact, Plaintiff does not even address Defendants' arguments in her Response. Plaintiff cannot rest on her pleadings. *United States v. Allen,* 578 F.2d 236, 237 (9th Cir.1978). Accordingly, Defendants are entitled to summary judgment on this count.

## COUNT VIII: VIOLATION OF 42 U.S.C. §§ 1981, 1983, 1985

### A. 42 U.S.C. § 1981

■ 42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In their motion Defendants contend that 42 U.S.C. § 1981 does not apply to the context of wrongful discharge. Defendants cite *Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989). In *Overby,* the plaintiff, who was black, was fired and brought a claim under 42 U.S.C. § 1981. The court held that the district court properly granted summary judgment in the defendant's favor because plaintiff alleged retaliatory conduct, which constitutes "post formation conduct" rather than interference with the right to "make and enforce" a contract. *Id.* at 473. Therefore, § 1981 did not apply. *Id.* However, as Plaintiff notes, § 1981 has been amended since *Overby* was decided. Section 1981(b) now provides:

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, *and termination of contracts,* and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

In their reply, Defendants do not argue that the amended statute does not apply in this case.

Defendants also argue that § 1981 prohibits discrimination based on race and national origin only, and that Plaintiff cannot show that she was prevented from making or enforcing a contract because of her race or national origin. In her deposition, Plaintiff testified that her national origin was "American" and that none of the Defendants discriminated against her on the basis of her national origin. Plaintiff's deposition, p. 287–8.

Plaintiff cites *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) for the proposition that § 1981 "protects all person against discrimination and provides equality in employment." Plaintiff's response, p. 31. However, the Court in *McDonald* simply held that § 1981 prohibits racial discrimination against whites as well as blacks. The Court noted that it has interpreted the phrase "as is enjoyed by white citizens" as emphasizing "the racial character of the rights being protected." *Id.* at 286, 287, 96 S.Ct. at 2581, 2582, citing *Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). Because Plaintiff does not present any proper evidentiary material showing that she was terminated because of her race or national origin, Defendants are entitled to summary judgment on Plaintiff's § 1981 claim.

### B. 42 U.S.C. § 1983

■ As for Plaintiff's § 1983 claim, the City relies on *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, the Supreme Court held that municipalities may be held liable under § 1983 as "persons." However, the Supreme Court explained that the nature of municipal liability is not premised on *respondeat superior* theory. Instead, "the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. at 2036.

The Supreme Court also explained that a municipality could be liable for action alleged to be unconstitutional pursuant to govern-

ment custom, "even though such custom has not received formal approval through the body's official decision-making channels." *Id.* at 690, 98 S.Ct. at 2035–6. Plaintiff also relies on *Colburn v. Upper Darby Township,* 838 F.2d 663 (3rd Cir.1988). In that case, the Third Circuit explained that an "official policy" may be inferred from "informal acts or omissions of supervisory municipal officials." In her deposition, Plaintiff testified that it is the City's official policy not to discriminate against the handicapped or those who receive worker's compensation. Plaintiff's deposition, p. 391. When asked in her deposition whether she believed the City had an unwritten policy to discriminate against handicapped employees or had any evidence of such an unwritten policy, Plaintiff answered "No." Plaintiff's deposition, p. 394. Furthermore, Plaintiff has failed to supply in her response any evidentiary material in support of her claim. Plaintiff's bare allegations in her response that "the entire cadre of supervision in the police department, through the human resources manager to the city manager were involved in the decisions made in this case" and that the city manager "was aware that special accommodations had been made for ... a sworn officer" are not enough to survive a motion for summary judgment. Consequently, summary judgment on Plaintiff's § 1983 claim against the City is appropriate.

As for the other Defendants, Plaintiff is vague as to the basis for her § 1983 claim. Because § 1983 is a vehicle for addressing violations of federal constitutional or statutory rights, the only apparent grounds for her claim could be the violation of her Fourteenth Amendment equal protection rights, violation of her liberty interest, or violation of her rights under 42 U.S.C. §§ 1981 and 1985. From her response, it appears Plaintiff is claiming a violation of her Fourteenth Amendment equal protection rights.

As previously explained, Plaintiff is unable to meet her burden on summary judgment with regard to her equal protection claim. Thus, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim.

### C. 42 U.S.C. § 1985

Defendants contend that there is no evidence supporting Plaintiff's 42 U.S.C. § 1985 claim, which is a conspiracy claim. When asked what evidence she had that the defendants worked in concert to deprive her of her rights, Plaintiff answered:

> "A. Well, I worked there for ten-and-a-half years. I known how things are done. And they do get together and they do make several discussions about an employee and they kick it around for possible solutions."

Plaintiff's deposition, p. 388–9.

Plaintiff has failed to provide any evidence supporting her theory of conspiracy from which a jury could reasonably find in her favor on this claim. Thus, Defendants are entitled to summary judgment on Plaintiff's § 1985 claim.

### COUNT IX: BREACH OF LIBERTY INTEREST

Plaintiff claims that she has a liberty interest in continued employment with the City and the joint and several acts and omissions of the defendants have collectively resulted in Plaintiff's contractual rights and liberty interest being frustrated and violated. In *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972), the Supreme Court explained that when an individual has suffered a tangible loss, a liberty interest is implicated only when the state makes a "charge against him that might seriously damage his standing and associations in the community." The *Roth* court stated that a charge of dishonesty or immorality would implicate an individual's liberty interest. As the Ninth Circuit explained in *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361 (1976):

> In the context of *Roth*-type cases, a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions *outside* of professional life.

*Id.* at 366. When asked to provide the factual support for the claim that she had been stigmatized, Plaintiff testified at length to

her general belief that any time an employee is terminated from a long-term job, her reputation is diminished. Plaintiff's deposition, p. 423–6. Plaintiff also testified that a job interview was terminated shortly after the interviewer discovered she had been terminated by the City and that there was a pending lawsuit. Plaintiff's deposition, p. 424–5. Plaintiff has failed to provide any evidence that she has experienced any repercussions from the firing outside of her professional life. Accordingly, Defendants are entitled to summary judgment on Plaintiff's breach of liberty interest claim.

### COUNT X: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiff claims that Defendants "have jointly and severally undertaken to interfere with the contractual relationship between the plaintiff and the city, and, in that connection, have jointly and severally frustrated, interfered with, caused the breach of, or actively sought to deprive the plaintiff of employment opportunities with the City of Mesa." Plaintiff's complaint, p. 13.

■ An employer cannot interfere with its own contract. *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 57, 672 P.2d 1322, 1327 (App. 1983). Thus, the City of Mesa cannot be liable for intentional interference with its own contract. Plaintiff testified in her deposition that she is unaware of any facts that would support an allegation that Defendants attempted to stop third parties from entering into employment contracts with her. Thus, the City is entitled to summary judgment on this count.

■ As for the individual Defendants, when an employer's employees are acting within the scope of their employment, they cannot be liable for interference with another employee's relationship with the employer. *Id.* The individual defendants cite Plaintiff's complaint, which alleges that "Each of the said defendants was acting or purporting to act under color of state law." Plaintiff does not provide any evidence from which the Court could infer that Defendants were acting individually and not in their official capacity and, therefore, the individual defen-

dants are entitled to summary judgment on this count.

### IMMUNITY OF THE INDIVIDUAL DEFENDANTS

The individual defendants claim that they are entitled to qualified immunity. The counts remaining against the individual defendants are (1) Count I—Violation of the Arizona Civil Rights Act and (2) Count II—Discrimination in Violation of Public Policy.

■ In Arizona, government employees are entitled to qualified immunity for those acts that are "reasonably within the employee's discretionary authority" such as "when officials are setting policy or performing an act that inherently requires judgment or discretion." *Chamberlain v. Mathis*, 151 Ariz. 551, 555, 729 P.2d 905, 909 (1986). In *Chamberlain*, the court held that

> [q]ualified immunity protects government officials from liability for acts within the scope of their public duties unless the official knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights.

*Id.* at 558, 729 P.2d at 912. The *Chamberlain* court gave as an example of a discretionary act protected by qualified immunity the activity of evaluating employee performance. The court reasoned that such acts warrant qualified immunity because they are necessary "to advance important public objectives: effective government administered by skilled officials." *Id.* at 556, 729 P.2d at 910. Thus, it appears that summary judgment in favor of the individual defendants on the remaining counts is appropriate unless the individual defendants "knew or should have known" that they were "acting in violation of established law or acted in reckless disregard of whether [their] activities would deprive another person of their rights."

In determining whether the individual defendants in this case are entitled to qualified immunity, this Court is guided by the Ninth Circuit's application of the qualified immunity doctrine in the case of federal officials. The United States Supreme Court has stated

that federal government officials have qualified immunity if "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As the Ninth Circuit explained in reviewing a district court's denial of a motion for summary judgment based on immunity, all that needs to be determined is whether the legal norms allegedly violated by the defendants were clearly established at the time of the challenged action. *Manhattan Beach Police Officers Assoc., Inc., v. City of Manhattan Beach*, 881 F.2d 816, 818 (9th Cir.1989).

 In this case, it clearly violates A.R.S. § 41–1461 to discriminate against an individual in employment based on that individual's handicap. Thus, the individual defendants are not entitled to summary judgment on the issue of immunity with respect to Count I. Furthermore, Arizona case law clearly establishes liability for termination of an employee in violation of public policy, and the policy against handicap discrimination is clear. Thus, the individual defendants are not entitled to summary judgment on the issue of qualified immunity with regard to Count II.

### *PUNITIVE DAMAGES*

 To recover punitive damages, Plaintiff must prove by clear and convincing evidence that Defendants acted with an "evil mind" and that their actions were "outrageous" and "reprehensible." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331–332, 723 P.2d 675, 680–681 (1986). Plaintiff has failed to provide any evidence from which a finder of fact could find that Defendants acted with an evil mind when they fired Plaintiff. Further, the Defendants have submitted affidavits attesting to the absence of any intent to harm Plaintiff or act improperly. Thus, Defendants are entitled to summary judgment on the issue of punitive damages.

Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendant's Motion for Summary Judgment.

**FURTHER ORDERED** Defendant's Motion is granted with Respect to Counts III, V, VI, VII, VIII, IX, X and on the issue of punitive damages.

**FURTHER ORDERED** Defendant's Motion is denied with respect to Counts I, II and IV.