937 P.2d 1382

**Linus R. FRANCINI, Jr., Plaintiff–Appellant, Cross Appellee,**

v.

**PHOENIX NEWSPAPERS, INC., Defendant–Appellee, Cross Appellant.**

**No. 1 CA–CV 94–0524.**

Court of Appeals of Arizona, Division 1, Department D.

June 27, 1996.

Reconsideration Denied Oct. 4, 1996.

Arizona Center for Disability Law by Sarah R. Allen, Phoenix, for Appellant–Cross Appellee.

Bryan Cave by Marshall W. Anstandig and Joseph T. Clees, Phoenix, for Appellee–Cross Appellant.

## OPINION

GARBARINO, Judge.

In this appeal, we consider whether the trial court correctly dismissed an employee's disability discrimination action because he had not utilized the grievance procedures in the applicable collective bargaining agreement. We hold that the agreement did not cover statutory claims, and thus the employee was not required to exhaust the collective bargaining agreement remedies before bringing his statutory action.

## FACTUAL AND PROCEDURAL HISTORY [1]

■ Appellant Linus Francini (Francini) has been deaf since birth. In February 1981, appellee Phoenix Newspapers, Inc. (PNI) hired him as a journeyman mailer working in the mailroom. He was subsequently promoted to the position of mailer operator. All employees in the PNI mailroom are represented by the Teamsters Union for collective bargaining purposes concerning wages, hours and working conditions.

In approximately July 1989, Francini's supervisor began allowing Francini to do fill-in machinist work when full-time machinists failed to report for work. When Francini filled in as a machinist, he earned $3.00 per shift above his mailer operator salary. Machinists set up, monitor and operate PNI's high-speed mailer inserting machines.

On June 11, 1990, Francini worked as a fill-in machinist. He was setting up a newly-installed inserting machine while another machinist, Sam Rappazzo (Rappazzo), worked on another inserter. They were the only employees in the mailing area that night. The inserting machine on which Francini was working malfunctioned and made a loud banging noise, which he could not hear. Rappazzo shut off the machine. The machine sustained about $12,000 in damage, and because the malfunction was caused by faulty installation, the manufacturer paid approximately $6,000 of the repair cost. The manufacturer refused to pay for all the damage because it believed that Francini's inability to hear the noise caused by the malfunction delayed the shutting off of the machine and increased the damage that occurred.

PNI informed Francini that he no longer would be allowed to work as a machinist because of his inability to hear machine problems. PNI also believed that Francini's service as a machinist posed a risk to his coworkers because he would be unable to hear their requests for help if they needed emergency assistance. He continued to work as a mailroom operator.

Francini filed a grievance with the union concerning PNI's decision. On August 31, 1990, he filed a charge of disability discrimination with the Arizona Civil Rights Division (ACRD). When representatives of PNI and the union met with Francini on September 28, 1990, concerning his grievance, they decided to suspend consideration of the grievance until the ACRD took action on Francini's charge.

On May 29, 1991, the ACRD issued to Francini a notice of right to sue. Francini drafted a complaint and filed it *pro se* on August 20, 1991. He did not serve the complaint on PNI, the only defendant. On June 30, 1992, Francini filed his first amended complaint, which was prepared by counsel. He alleged that PNI discriminated against him on the basis of his handicap and refused to reasonably accommodate his handicap. He sought reinstatement to the position of fill-in machinist, front pay, back pay, and restoration of all benefits, seniority and leave he would have accrued if he had not been disqualified from the position.

PNI removed the action to the United States District Court. The federal court remanded the case to the superior court based on its conclusion that Francini's state law discrimination claims were independent from the collective bargaining agreement.

PNI moved for summary judgment, arguing that: (1) Francini could not satisfy the jurisdictional prerequisites of the Arizona Civil Rights Act (ACRA) because his impairment did not qualify as a disability under the ACRA and he had failed to comply with ACRA notice requirements; (2) he was unable to perform the essential elements of the machinist position even with reasonable accommodation; (3) his service in the position posed an undue risk of injury to himself and others; and (4) he failed to exhaust his grievance remedies under the collective bargaining agreement. PNI's exhaustion of grievance remedies argument was based on the following sections of the collective bargaining agreement:

---

1. Because this is an appeal from summary judgment, we view the facts in the light most favorable to Francini, the party against whom judgment was entered. *See AROK Constr. Co. v. Indian Constr. Serv.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993).

## STANDING COMMITTEE

Section 11. A standing committee of two representatives appointed by the party of the first part, and a like committee of two representatives appointed by the party of the second part, shall be maintained.... To this joint standing committee shall be referred all disputes which may arise as to the construction to be placed upon any clause of the agreement, except as provided otherwise herein, or alleged violations thereof, which can not [sic] be settled otherwise, and such Joint Standing Committee shall meet when any question of difference shall have been referred to it for decision by the executive officers of either party to this agreement. Should the Joint Standing Committee be unable to agree, then it shall refer the matter to a board of arbitration.... The decision of this board shall be final and binding upon both parties.

## MAILER MACHINIST

Section 15. There shall be a Mailer Machinist on all shifts of newspaper production, to be used for repair and maintenance work.

. . . .

(c) Mailer machinist jobs shall be posted and employees whom the foreman deems competent may exercise their priority on these positions.

The trial court ruled that Francini is a qualified handicapped person under the ACRA and that PNI had actual notice of his impairment. The court found disputed facts as to the feasibility of accommodations to enable Francini to do the machinist job, and thus summary judgment was not appropriate on that issue. However, the court also found that the collective bargaining agreement provided remedies applicable to Francini's discrimination claim, and that because Francini failed to exhaust those remedies, PNI was entitled to summary judgment.

Judgment was entered denying all of the claims pled in Francini's amended complaint. The court awarded PNI its costs of $2,609.55. In an amended judgment, the court changed the amount of the costs awarded to $2,541.55.

Francini timely appealed from the judgment in favor of PNI. PNI cross-appealed from the judgment.

## ISSUES

Francini raises the following issues on appeal:

1. Did the trial court err by granting summary judgment based on its ruling that Francini was required to exhaust the grievance procedures under his collective bargaining agreement before filing a court action on his discrimination claim?

2. Did the trial court err by awarding PNI its costs?

The issues PNI presents in its cross-appeal are as follows:

1. Did the trial court err by not granting summary judgment on the ground that Francini's ability to secure a number of jobs meant that he was not substantially limited in his general ability to secure employment?

2. Did the trial court err by not granting summary judgment on the ground that Francini could not perform the essential functions of the fill-in machinist position with or without reasonable accommodation?

3. Did the trial court err by not granting summary judgment on the ground that Francini posed a threat to the health and safety of others?

4. Did the trial court err by not granting summary judgment on the ground that Francini failed to comply with the notice requirements of the ACRA?

## DISCUSSION

I. *Appeal Issues*

A. *Exhaustion of Procedures Under Collective Bargaining Agreement*

On appeal from the summary judgment, Francini argues that his statutory discrimination claim was not covered by the collective bargaining agreement. He points out that nothing in the agreement addresses employment discrimination on the basis of disability. According to Francini, because he did not

agree to arbitrate discrimination claims, his statutory claim is not precluded by his failure to exhaust the grievance procedure of the collective bargaining agreement.

In response, PNI argues that Francini was required by law to exhaust his collective bargaining agreement remedies before bringing a lawsuit. It contends that Francini's claim concerns the provision in the collective bargaining agreement which says that if the foreman deems an employee competent for mailer machinist jobs, the employee may exercise his priority on the positions. PNI relies on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

As a starting point, we examine the *Gilmer* holding. Gilmer was required by his employer, Interstate, to register as a securities representative with the New York Stock Exchange (N.Y.SE). 500 U.S. at 23, 111 S.Ct. at 1650–51. By his registration application, he agreed to "arbitrate any dispute, claim or controversy" with Interstate as required by NYSE rules. *Id.* An NYSE rule provided for arbitration of any controversy arising out of the employment or the termination of employment of a registered representative. *Id.*

Interstate terminated Gilmer's employment when he was 62 years old. *Id.* Gilmer filed a charge of age discrimination with the Equal Employment Opportunity Commission and brought suit in federal court alleging that he had been discharged in violation of the Age Discrimination in Employment Act of 1967 (ADEA). *Id.* at 23–24, 111 S.Ct. at 1650–51. Interstate moved to compel arbitration, relying on the agreement in Gilmer's registration application and the Federal Arbitration Act. *Id.* at 24, 111 S.Ct. at 1651.

The Supreme Court held that under these circumstances an ADEA claim can be subjected to compulsory arbitration. *Id.* at 35, 111 S.Ct. at 1656–57. The Court explained that once a party made a bargain to arbitrate, the party should be held to the agreement unless Congress had precluded the waiver of judicial remedies for the statutory rights involved. *Id.* at 26, 111 S.Ct. at 1652. Nothing in the text of the ADEA or its legislative history explicitly precluded arbitration. *Id.* The Court saw no inherent inconsistency between the policies of the ADEA and enforcing agreements to arbitrate age discrimination claims. *Id.* at 27, 111 S.Ct. at 1652–53.

PNI maintains that in light of *Gilmer,* the U.S. Supreme Court's decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), is now obsolete. We disagree. In *Alexander,* the Court held that a discharged employee whose grievance had been arbitrated pursuant to a collective bargaining agreement could bring a Title VII action based on the conduct that was the subject of the grievance. 415 U.S. at 59–60, 94 S.Ct. at 1025. The *Gilmer* Court did not overrule *Alexander* but instead pointed out that in *Alexander* it had stressed that "an employee's contractual rights under a collective-bargaining agreement are distinct from the employee's statutory Title VII rights." *Gilmer,* 500 U.S. at 34, 111 S.Ct. at 1656. The *Gilmer* Court quoted from *Alexander:*

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Id.* (quoting *Alexander,* 415 U.S. at 49–50, 94 S.Ct. at 1020–21).

The *Gilmer* Court noted several important distinctions between the case before it and *Alexander* and its progeny, *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984):

> First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees

there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements."

*Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1657 (citation omitted).

The question before us, as posed by PNI, is whether the collective bargaining agreement covered Francini's disability discrimination claim such that he had to exhaust remedies under the agreement before filing an action in court under the ACRA. However, also implied in the trial court's dismissal of Francini's action is the conclusion that the collective bargaining agreement remedies were Francini's only remedies because of the agreement's language that any decision by the board of arbitration is "final and binding."

■ Because the ACRA is modeled after federal employment discrimination laws—Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e—federal case law is persuasive in applying the ACRA. *Timmons v. City of Tucson,* 171 Ariz. 350, 354, 830 P.2d 871, 875 (App.1991). Federal cases following *Alexander* have concluded that unions cannot waive workers' Title VII or ADEA rights through collective bargaining. *See, e.g., EEOC v. Board of Governors,* 957 F.2d 424, 431 (7th Cir.), *cert. denied,* 506 U.S. 906, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992); *EEOC v. County of Calumet,* 686 F.2d 1249, 1256–57 (7th Cir.1982); *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 147 (D.Conn.1993). As explained by the Supreme Court in *Barrentine,* in the context of a claim under the Fair Labor Standards Act,

statutory rights of employees "are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable." 450 U.S. at 745, 101 S.Ct. at 1447.

■ The *Alexander* and *Barrentine* Courts noted that there are two reasons why statutory rights may not be waived by a collective bargaining agreement. First, the collective bargaining process could fail to protect individual statutory rights because the collective bargaining process involves a "majoritarian process" that places a higher priority on the good of the union members as a group rather than on the individual worker. *Alexander,* 415 U.S. at 51, 94 S.Ct. at 1021; *Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1445–46. In contrast, discrimination laws concern the individual's right to equal employment opportunities. *Alexander,* 415 U.S. at 51, 94 S.Ct. at 1021. This possible conflict between individual and group interests should not be allowed to hinder the statutory rights granted to individual employees. *Id.*

Second, labor arbitrators have authority to construe and apply contracts, not statutes. *Id.* at 53–54, 94 S.Ct. at 1022–23. They may not have the expertise to determine and apply statutory rights. *Barrentine,* 450 U.S. at 743, 101 S.Ct. at 1446. Even if an arbitrator is competent to interpret and apply the law, he will likely be limited by the terms of the collective bargaining agreement to construing the meaning of the agreement. *Id.* at 744, 101 S.Ct. at 1446–47.

■ As noted by the court in *Claps,* nothing in *Gilmer* suggests that the Supreme Court "abandoned or even reconsidered its efforts to protect individual statutory rights from the give-and-take of the collective-bargaining process." 819 F.Supp. at 146. Under *Gilmer,* employees may enter into individual contracts in which they agree to arbitrate statutory claims. 500 U.S. at 26, 111 S.Ct. at 1652. However, the *Gilmer* Court explicitly distinguished the holdings from *Alexander, Barrentine,* and *McDonald,* thus declining to undermine the statutory rights afforded employees who are subject to a collective bargaining

agreement. *Gilmer*, 500 U.S. at 33–35, 111 S.Ct. at 1655–57; *see also Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 935 (9th Cir.1992) (The holdings of *Alexander* and its progeny, which involve labor arbitration clauses in collective bargaining agreements, are distinguishable from *Gilmer*, which involved a privately negotiated commercial arbitration agreement.).

We acknowledge that there is some authority for the proposition that workers may waive their statutory rights in collective bargaining agreements. In *Austin v. Owens–Brockway Glass Container, Inc.*, 844 F.Supp. 1103, 1106 (W.D.Va.1994), *aff'd as modified*, 78 F.3d 875 (4th Cir.1996), the collective bargaining agreement provided for grievance procedures to be used to resolve disputes under the Americans with Disabilities Act (ADA). The court granted summary judgment for the defendant, ruling that the plaintiff's claim was subject to mandatory arbitration, which she had failed to utilize. *Id.* at 1107.

■ In the case before us, however, we need not decide whether workers may explicitly waive their statutory rights in a collective bargaining agreement because the agreement under which Francini worked does not contain an explicit waiver. We cannot imply such a waiver from the provision concerning referral of disputes to the standing committee and arbitration board or from the section giving the foreman the authority to determine which workers are competent to work as a mailer machinist. Even an employee who enters into an individual employment agreement may not be deemed to have waived the statutory rights, remedies, and procedural protections contained in Title VII and related state statutes unless the employee knowingly agreed to arbitrate employment disputes. *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1304, 1305 (9th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995).[2] Nothing in the collective bargaining agreement indicates that workers like Francini knowingly agreed to arbitrate statutory employment claims.

■ PNI argues that before bringing his lawsuit, Francini was required to first exhaust all collective bargaining agreement remedies, citing *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 55–56, 672 P.2d 1322, 1325–26 (App.1983). Payne sued his former employer for wrongful discharge and sued the employer's management representatives for interference with his contract. *Id.* at 54, 672 P.2d at 1324. This Court held that wrongful discharge was a grievance covered by the collective bargaining agreement and that Payne's exclusive remedy was arbitration. *Id.* at 55–56, 672 P.2d at 1325–26. However, the *Payne* Court noted that the U.S. Supreme Court had permitted exceptions to the exhaustion requirement when an employee filed suit under a statute that provided a remedy for matters also covered by a collective bargaining agreement, citing *Barrentine* and *Alexander*. *Id.* at 56, 672 P.2d at 1326. Thus, we believe the *Payne* exhaustion of remedies holding does not apply where, as here, the worker brings a statutory discrimination claim that is not covered by the collective bargaining agreement.[3]

**2.** The *Lai* court noted that Congress, when enacting the Civil Rights Act of 1991, expressed its intent to offer arbitration of discrimination claims to expand the remedies available to claimants, not to supplant the statutory remedies. The court quoted a report from the House of Representatives:

[T]he committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with the Supreme Court's interpretation of Title VII in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

42 F.3d at 1304 (quoting H.R.Rep. No. 40(I), 102nd Cong., 1st Sess., *reprinted in* 1991 U.S.C.C.A.N. 549, 635).

**3.** PNI cites *Davis v. Johnson Controls, Inc.*, 21 F.3d 866 (8th Cir.), *cert. denied*, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994), as support for its position. In *Davis*, the court held that a state law discrimination claim was preempted by the Labor Management Relations Act because relocation of the employee to another position to accommodate his disability would require an examination of seniority rights under the collective bargaining agreement. *Id.* at 868. In Francini's case, there is no allegation that any of the accommodations suggested would implicate the collective bargaining agreement.

■ PNI further argues that Francini cannot now argue that the remedies contained in the contract grievance procedure do not apply to his claim because he initially invoked the procedure. PNI relies on *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437 (9th Cir.), *cert. denied*, 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994), as support for this argument.

After Nghiem was fired, he followed the four-step arbitration process called for in the company handbook. *Id.* at 1439. He also filed a court action alleging wrongful termination, race discrimination, and an antitrust violation. *Id.* The court held that because Nghiem voluntarily submitted to arbitration, he was bound by the arbitrator's decision. *Id.* at 1440.

*Nghiem* is not controlling here. First, *Nghiem* did not involve a collective bargaining agreement. More importantly, Francini did not engage himself in the grievance procedure set forth in the collective bargaining agreement. Although he met with representatives of PNI and the union on September 28, 1990, there is no indication in the record that the meeting constituted a hearing before the joint standing committee. There were six representatives of PNI present; none were designated as PNI's appointees to the standing committee. The transcript indicates the presence of one union representative, while the minutes list two union representatives. Neither document identifies them as appointees to the standing committee. If the matter had been referred to a board of arbitration, it would have been done by the joint standing committee. No such referral was made. Therefore, we conclude from the record that Francini merely engaged in an informal meeting with PNI and union representatives and that he did not embark on the grievance procedure called for in the agreement. Accordingly, *Nghiem* does not preclude his lawsuit.

In summary, we conclude that the collective bargaining agreement did not require Francini to arbitrate his statutory disability discrimination claim. His failure to utilize the grievance procedures does not bar his ACRA claim. Accordingly, we reverse the

trial court's grant of summary judgment in favor of PNI.

### B. *Award of Costs to PNI*

■ Francini challenges the award of costs to PNI. Because we reverse the grant of summary judgment, PNI is no longer entitled to an award of its costs.

### II. *Cross Appeal Issues*

In its cross appeal, PNI argues that the trial court should have granted summary judgment on four additional grounds it raised in its motion for summary judgment. In other words, PNI is appealing the denial of summary judgment as to four of the grounds asserted therein.

■ Ordinarily, this Court does not review the denial of a motion for summary judgment, even in connection with a proper appeal of a later appealable order or judgment. *See Clugston v. Moore*, 134 Ariz. 205, 208, 655 P.2d 29, 32 (App.1982); *Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.*, 12 Ariz.App. 424, 427–28, 471 P.2d 309, 312–13 (1970). However, where we reverse summary judgment that was granted on one ground, we may review the other grounds raised to determine whether the summary judgment can be sustained as being correct even though granted for the wrong reason. *See People ex rel. Babbitt v. Green Acres Trust*, 127 Ariz. 160, 167, 618 P.2d 1086, 1093 (App.1980). Accordingly, we review PNI's cross appeal on this basis.

### A. *Is Francini a Handicapped Person Under the ACRA?*

■ PNI argues that Francini is not disabled in a manner that invokes the protection of the ACRA. PNI contends that Francini is not protected by the Act because he failed to show that he personally had been substantially restricted or limited in his general ability to secure, retain, or advance in employment.

The ACRA provides at Arizona Revised Statutes Annotated (A.R.S.) section 41–1463(B)(1) that "[i]t is an unlawful employment practice for an employer ... to discriminate against any individual with respect

to his compensation, terms, conditions or privileges of employment because of such individual's ... handicap." At the time PNI removed Francini from the fill-in mailer machinist list, "handicap" was defined as "a physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment." A.R.S. § 41–1461(4) (1992) (amended 1994).

We conclude that a question of fact exists as to whether Francini has a handicap as defined in the version of A.R.S. section 41–1461(4) in effect in 1990. Francini is deaf, and his inability to hear the loud banging noise when the machine malfunctioned shows the severity of his hearing impairment. We believe that the trier of fact may find total deafness an impairment within the definition of handicap.

Furthermore, the trial court had affidavit testimony from two experts that deafness limits and restricts the ability to secure, retain, and advance in employment. One expert, a rehabilitation engineer, attested that "[b]ecause virtually all employment situations require communication with others in one fashion or another, deaf individuals are necessarily restricted or limited in their general ability to secure, retain or advance in employment." He noted that hearing impaired persons have historically been considered as handicapped and are eligible for state and federal vocational rehabilitation services.

The other expert, a faculty member at a technical institute for the deaf, attested that deaf persons are generally underemployed due to their handicap and have limited occupational mobility. He stated that deaf persons are traditionally relegated to lower level jobs in the printing industry.

Based on the record, we conclude that a question of fact exists as to whether Francini has a handicap and thus is protected under the ACRA. *See Bogue v. Better–Bilt Aluminum Co.,* 179 Ariz. 22, 28, 875 P.2d 1327, 1333 (App.1994) (stating that the issue of whether a person is handicapped under the ACRA is a question of fact in each case).

B. *Reasonable Accommodation*

■ PNI argues that Francini failed to demonstrate that he could perform the fill-in machinist job with or without reasonable accommodation. It contends that Francini is not a "qualified handicapped individual" as required by A.R.S. section 41–1463(M) because (1) the ability to detect machine malfunctions and employee injuries was an essential element of the job, (2) Francini could not perform the essential functions of the fill-in machinist position, and (3) there was no reasonable accommodation that would allow Francini to perform the essential elements of the job.

"Qualified handicapped individual" is defined at A.R.S. section 14–1461(7) as "a person with a handicap who with reasonable accommodation is capable of performing the essential functions of the particular job in question within the normal operation of the employer's business in terms of physical requirements, education, skill and experience."

We conclude that the record contains so much disputed fact on the issues of the essential functions of the position and availability of reasonable accommodations that this question is not appropriate for summary judgment. For example, at the September 28, 1990 meeting, PNI representatives repeatedly stated that Francini is a competent employee who does good work. There was no allegation that he could not perform the machinist's job other than that he could not hear malfunctions. Francini pointed out that the written job description does not list detecting machine malfunctions as an essential function of the machinist position. He also asserted, as did one of his experts, that the machine he worked on has a fault detection system that is intended to shut the machine down automatically under a variety of circumstances, including machine malfunction. He showed that he had successfully performed the machinist position on a fill-in basis for a year.

PNI asserted that other workers were afraid to work with Francini, but the record contains no affidavits to that effect from those unnamed workers. PNI argued that it had tried various methods of accommodating Francini's handicap but that nothing was successful. Francini, however, maintains that if accommodation is necessary, other methods

can be tried. We believe it is for a trier of fact to decide whether the attempts at accommodation were adequate to show that Francini's handicap cannot be accommodated. We agree with the trial court's statement that "there are disputed facts as to the feasibility of accommodations which may make hearing not an essential element of the job at issue."

For instructive purposes on remand, we proceed to determine which party shall bear the burden of establishing the existence of a reasonable accommodation. Some courts have held that the employer bears that burden. *See Mantolete v. Bolger*, 767 F.2d 1416, 1423 (9th Cir.1985); *see also Prewitt v. United States Postal Serv.*, 662 F.2d 292, 308 (5th Cir.1981). However, other courts have held that the claimant bears the burden. *See, e.g., Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir. 1991).

In *Prewitt*, the Fifth Circuit noted that the Equal Employment Opportunity Commission regulations placed "the burden of proving inability to accommodate ... upon the employer." 662 F.2d at 308. The court continued:

> The administrative reasons for so placing the burden likewise justify a similar burden of proof in a private action based upon the Rehabilitation Act. The employer has greater knowledge of the essentials of the job than does the handicapped applicant. The employer can look to its own experience, or, if that is not helpful, to that of other employers who have provided jobs to individuals with handicaps similar to those of the applicant in question. Furthermore, the employer may be able to obtain advice concerning possible accommodations from private and government sources.

*Id.; see also Mantolete*, 767 F.2d at 1423.

■ We find this reasoning persuasive and hold that the employer bears the burden of proving an inability to accommodate. However, "[o]nce the employer presents [that] evidence, the plaintiff has the burden of coming forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Prewitt*, 662 F.2d at 308; *Mantolete*, 767 F.2d at 1424.

■ PNI argues that Francini admitted in his original complaint that he could not perform the duties of the position and that he cannot contradict this prior sworn statement. We disagree. Once an amended complaint is filed, as it was here, it supersedes the original complaint, which becomes *functus officio*, that is, of no further effect or authority. *Campbell v. Deddens*, 21 Ariz.App. 295, 297, 518 P.2d 1012, 1014 (1974). Therefore, the representations made by Francini in his original complaint, which he asserts were made by mistake, do not bind him.

## C. *Health and Safety Threat*

■ The ACRA defines "reasonable accommodation" as "an accommodation which does not ... [t]hreaten the health or safety of the handicapped individual or others." A.R.S. § 41–1461(8)(b) (1992). PNI argues that Francini's performance of the machinist position posed a safety threat to himself and others.

We find that this issue involves disputed facts and thus is not appropriate for summary judgment. PNI's safety concerns appear to be theoretical. While we do not believe that someone actually must be hurt due to Francini's performance of the job before PNI could remove him due to safety concerns, the safety issue was merely supported by PNI's assertions. Although one of its supervisors testified in deposition that four workers in the past had suffered injuries in the machine, there was no evidence that any of the injuries were caused or exacerbated by a fellow worker's inability to hear.

Francini points out that no one was injured while he worked as a machinist. The hypothetical nature of the alleged safety risk shows that the trial court was correct in declining to grant summary judgment on this issue.

## D. *ACRA Notice Requirements*

■ PNI argues that Francini cannot prevail in his discrimination claim because he did not give notice to PNI pursuant to A.R.S. section 41–1463(F)(5), which was in effect in

1990. That section provided that it was not an unlawful employment practice:

> For an employer to take any action prohibited by subsection B of this section with respect to a handicapped individual if the qualified handicapped individual has not provided the employer with the following information before the action is taken by the employer:
>
> (a) That the qualified handicapped individual has an impairment or condition which constitutes a handicap within the meaning of § 41–1461, paragraph 4.
>
> (b) The general nature of the possible handicap and any limitations and restrictions resulting from it of which the qualified handicapped individual is aware.
>
> (c) The names of any physicians and other health care practitioners and any rehabilitation or placement counselors and consultants who may be able to provide additional information relating to the nature of the possible handicap and its effects, with a release permitting the employer to contact these persons for the purpose of obtaining additional information.

A.R.S. § 41–1463(F)(5) (1992) (amended 1994).

This Court dealt with the application of this provision in *Bogue*. There, we concluded that section 41–1463(F)(5) did not require a job applicant "to state that his physical impairment constituted a handicap within the meaning of section 41–1463." 179 Ariz. at 33, 875 P.2d at 1338. Instead, the statute merely required the applicant to "inform the employer of his physical condition and any restrictions or limitations that may affect his job performance." *Id.* This Court found that Bogue satisfied this requirement by submitting to a physical examination and answering questions regarding his ear condition. *Id.*

We believe this reasoning from *Bogue* applies to an individual who is already employed. There is no dispute that PNI was well aware of Francini's deafness. He disclosed his disability in his original job application with PNI in 1981. PNI knew that Francini required alternate means of communication, including an interpreter in American Sign Language. Because Francini's condition was permanent and stable, he was not being seen by any health care practitioner for the condition; therefore, he had no such name to reveal to PNI.

PNI had actual notice of Francini's condition sufficient to comply with the intent of the statute. Therefore, the trial court did not err by denying summary judgment on this ground.

## CONCLUSION

We reverse the trial court's grant of summary judgment because it was based on the erroneous conclusion that Francini was required to exhaust grievance remedies in the collective bargaining agreement. None of the other grounds argued by PNI in its motion for summary judgment entitle PNI to judgment. Therefore, we remand this action for further proceedings.

TOCI and KLEINSCHMIDT, JJ., concur.