NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARTINE STEPHAN , *Plaintiff/Appellant*,

*v.*

JAMES E. BERTZ, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0323

FILED 03-23-2026

Appeal from the Superior Court in Maricopa County
No.  CV2023-006960
The Honorable Michael J. Herrod, Judge

**VACATED IN PART AND REMANDED**

COUNSEL

Law Office of Craig Stephan, Scottsdale
By Craig A. Stephan
*Counsel for Plaintiff/Appellant*

Smith Law Group, Tucson
By Kathleen L. Leary, Christopher J. Smith
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

---

**K I L E Y**, Judge:

¶1        Martine Stephan appeals the denial of leave to amend, and the subsequent dismissal of, her complaint. Because her proposed amended complaint stated potentially viable claims for relief, we vacate the denial of leave to amend, reject her challenge to the dismissal of the original complaint as moot, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        Stephan has alleged the following facts, which we take as true. *See MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996).

¶3        An oral surgeon performed a maxillofacial surgical procedure on Stephan in 2000. A few weeks later, Stephan developed an infection that resulted in a "foul taste" in her mouth and "drainage" running "down [her] throat[,]" causing stomach discomfort and nausea.

¶4        The following year, Stephan began seeing James E. Bertz, M.D., D.D.S., at Scottsdale Facial and Oral Surgery, LLC ("SFOS"). Bertz treated Stephan for more than fifteen years in an unsuccessful effort to identify the cause of the "foul taste and drainage" she continued to experience.

¶5        While at home one day in late December 2015, Stephan began experiencing "throbbing" in the lower left side of her mouth. Sensing that "something was stuck there[,]" she used the sharp end of a plastic floss pick to "prob[e]" into her gums, causing a metal "wire" to "pop[] out." She pulled the wire out of her mouth. She brought it to her next appointment with Bertz, which was a week or two later. Her discussion with Bertz led her to conclude that it was an "anchor wire" that had been used in the surgical procedure she underwent in 2000 and was inadvertently "left behind." Stephan left the wire in Bertz's possession.

¶6        In 2017, Stephan filed a medical negligence claim against Oral & Facial Surgery Center, PLC and the surgeon who performed the

maxillofacial procedure, alleging, *inter alia*, that they breached the standard of care "by leaving behind a foreign object in [her] body." Those claims were eventually dismissed. In the interim, however, Stephan amended her complaint to add a medical negligence claim against Bertz and SFOS, alleging, *inter alia*, that they breached the standard of care by failing to identify the cause of her gum infection or detect the presence of a foreign object in her gums.

¶7        Bertz and SFOS moved to dismiss the medical negligence claim because Stephan failed to serve a preliminary expert opinion affidavit ("PEOA"). *See* A.R.S. § 12-2603(F). When Stephan failed to respond to the motion to dismiss, the superior court dismissed her claims against Bertz and SFOS without prejudice.

¶8        Three years later, Stephan contacted SFOS to ask, *inter alia*, for the return of the wire that she had left with Bertz in December 2015. According to Stephan, she wanted the wire back to have it tested to "determine its composition" because she suspected that "having [it] in her body for 16 years" may have contributed to the "ongoing medical issues" she was experiencing. SFOS emailed Stephan to let her know "a wire" was "ready for pickup." Stephan's husband went to SFOS, where the receptionist gave him a wire which, he knew immediately, "was not the same wire" that Stephan had removed from her gums. He brought it home and showed it to Stephan, who likewise could tell that it was not the same wire she had left with Bertz, noting that it was "smaller and different in kind[.]"

¶9        Stephan sued Bertz and SFOS (collectively, "Appellees") over their handling of the wire, alleging claims for breach of bailment, conversion, and replevin. Stephan's complaint alleged that the wire constituted "personal property" which she gave to Bertz "for safekeeping as part of her medical records." By accepting possession of the wire, she alleged, Bertz assumed "a duty of reasonable care to safely protect and preserve" it. Bertz and SFOS were liable to her, she alleged, because they "wrongfully retained the wire" and gave her a "fake" one in its place. She requested relief in the form of damages and an injunction requiring the return of the wire.

¶10        Appellees moved to require Stephan to provide a PEOA under A.R.S. § 12-2603(B). Noting that Stephan's complaint expressly alleged that the wire was "part of her medical records[,]" they asserted that Stephan was required to present expert testimony that they breached the standard of care in their handling of her records.

¶11 In response, Stephan asserted that the requirements of Section 12-2603 did not apply because her claims did not arise out of Bertz's provision of medical services. Instead, she argued, her complaint alleged claims based on Bertz's failure to preserve "personal property" that she gave to him for "safekeeping." A jury would not "require medical expertise[,]" she argued, to determine whether Bertz improperly failed to preserve the wire and then gave her "a fake version" when she asked for it back.

¶12 After briefing and argument, the superior court ruled that "the wire became part of [Stephan's] medical record" when Bertz agreed to take possession of it, and therefore that Stephan's claims "arise[] out of the doctor-patient relationship[.]"Accordingly, the court ruled, Stephan's claims required expert testimony about the standard of care for maintaining medical records. The court therefore ordered Stephan to provide a PEOA to support her claims by a deadline that the court set. Stephan moved for reconsideration; the court denied her motion.

¶13 Stephan then filed a notice stating that she was unable to comply with the order requiring her to provide a PEOA to support her claims. She simultaneously moved for leave to amend her complaint to, *inter alia*, remove the allegation that the wire became "part of her medical records" and to add a sentence stating that "[a]t no time did [Bertz] provide any medical care, surgical care, diagnosis, prognosis, or treatment relating to the wire." She also sought to add a new claim for "negligent loss or destruction" under Section 323 of the Restatement (Second) of Torts ("Section 323"). Bertz and SFOS opposed Stephan's motion, asserting that amending the complaint "would be futile" because her case "is a medical negligence action regardless of what [Stephan] wants to call it."

¶14 After briefing and argument, the court issued a ruling finding that Stephan's proposed amendments amounted to "wholesale changes to the factual allegations" of the original complaint based on "no new evidence." Reiterating its prior determination that the allegations in the original complaint "sounded in medical negligence because the claims arose out of the doctor patient relationship[,]" the court denied leave to amend and, because Stephan had not provided a PEOA as ordered, dismissed the original complaint under A.R.S. § 12-2602(F).

¶15 After awarding attorney fees and costs to Appellees, the court entered final judgment in March 2025. Stephan timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

4

**DISCUSSION**

**¶16** Stephan argues that the court erred in denying her leave to amend her complaint, in dismissing her original complaint, and in awarding attorney fees. Because it is dispositive, we address only the first argument.

**¶17** Leave to amend a complaint "must be freely given when justice requires[,]" Ariz. R. Civ. P. 15(a)(2), and should be granted "if the underlying facts or circumstances relied upon may be a proper subject of relief." *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 471, ¶ 40 (App. 2007) (citation modified). We review the denial of leave to amend a complaint for an abuse of discretion. *In re Torstenson's Est.*, 125 Ariz. 373, 376 (App. 1980). We review *de novo* whether a proposed amendment would be futile, accepting as true all well-pled factual allegations in the proposed amended complaint. *See Ute Mountain Ute Tribe v. Ariz. Dep't of Revenue*, 254 Ariz. 410, 416, ¶ 22 (App. 2023).

**¶18** Stephan's proposed amended complaint alleged, *inter alia*, a claim for breach of bailment. To state such a claim, a plaintiff must allege that "personal property [was] delivered to [the defendant] . . . for a specific purpose, with the express or implied agreement that the property will be returned or accounted for when the purpose is accomplished[,]" *Kim v. Wong*, 253 Ariz. 247, 248, ¶ 10 (App. 2022) (citation omitted), and that the defendant breached that agreement by "fail[ing] to redeliver the item[.]" Restatement (Fourth) of Property § 14 TD No 3 (2022).

**¶19** Stephan's proposed amended complaint alleged that she gave the wire to Bertz for the purpose of "safekeeping," that Bertz "accepted [it] for that purpose," and that Bertz failed to redeliver the wire to her when she asked for it. These allegations, if true, would establish a claim for breach of bailment. *See, e.g.*, *Siverson v. Martori*, 119 Ariz. 440, 443 (App. 1978) (noting that a bailment was created when parents, who purchased and held title to motorcycle, allowed their son to maintain possession of it); *see also N.Y. Cent. Mut. Ins. Co. v. Med. Diagnostic Imaging, PLLC*, 930 N.Y.S.2d 421, 423-24 (N.Y. City Ct. 2011) (holding that bailment was created between patient and medical imaging technician when technician directed patient to remove her jewelry before undergoing medical imaging and assured her, "I'll take care of it").

**¶20** Stephan's proposed amended complaint also alleged claims for conversion and replevin. To state a claim for conversion, a plaintiff must allege "an intentional exercise of dominion or control over a chattel which

so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 34 (App. 2005) (quoting Restatement (Second) of Torts § 222A(1) (1965)). To state a replevin claim, a plaintiff must allege that the defendant wrongfully retained the plaintiff's personal property. *See* A.R.S. §§ 12-1301 *et seq.*; *see also First Nat'l Bank of Ariz. v. Superior Court*, 112 Ariz. 292, 294 (1975).

¶21        Stephan's proposed amended complaint alleged that the wire was her personal property, that Bertz agreed to hold it for her for safekeeping, and that he failed to return it to her when she asked for it back. These allegations are sufficient to state conversion and replevin claims.

¶22        Stephan's proposed amended complaint alleged a claim for the loss of her personal property under Section 323. Section 323 provides that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Arizona recognizes a cause of action under Section 323. *See Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 402, ¶¶ 70-71 (App. 2005) (recognizing that Section 323 may establish basis for married couple's claim against medical facility for loss or destruction of cryogenically frozen pre-embryos). The allegations in the proposed amended complaint are sufficient to state a claim for relief under Section 323.

¶23        Finally, the proposed amended complaint sets forth a purported "claim" for injunction. An injunction is not a cause of action, however, but a remedy that may be available to one who prevails on a cause of action. *See Remedy*, Black's Law Dictionary (12th ed. 2024) ("A remedy is anything a court can do for a litigant who has been wronged or is about to be wronged[,]" and that "[t]he two most common remedies" are "damages" and "injunctions" (citation omitted)). Injunctive relief may be an available

6

remedy for Stephan's other claims. *See, e.g.*, Restatement (Second) of Torts § 922(b) (1965) ("When chattels have been taken and have not been returned . . . [i]n lieu of seeking damages for its value, the owner may regain possession of the chattel[.]"); *Ivey v. Turning Point Homes and Dev., Inc.*, 1 CA-CV 23-0021, 2023 WL 7544844 at *6, ¶ 33 (Ariz. App. Nov. 14, 2023) (mem. decision) ("Under appropriate circumstances, injunctive relief may be granted to a party that prevails on a claim for conversion[.]").

¶24 Although Stephan's proposed amended complaint alleges facts which, if true, would establish the elements of legally cognizable claims, Appellees nonetheless maintain that the superior court properly denied leave to amend. In support of their position, they contend, first, that no new circumstances arose after Stephan filed her original complaint to justify her requested amendment.

¶25 An amendment to a pleading need not be preceded, however, by a change in circumstances. On the contrary, a pleading may properly be amended simply to refine, eliminate, or add new legal theories of relief. *See Walls v. Ariz. Dep't of Public Safety*, 170 Ariz. 591, 597 (App. 1991) ("Denial of leave to amend is generally considered an abuse of discretion where the amendment merely seeks to add a new legal theory supported by factual issues already in the case."). The absence of new factual developments or other changed circumstances does not, standing alone, justify denial of leave to amend.

¶26 Appellees next contend that leave to amend was properly denied because Stephan's claims, both as originally pled and as amended, are too implausible to withstand scrutiny. Appellees challenge as unlikely, for example, Stephan's allegation that she entrusted the wire to Bertz, noting that she never claimed that Bertz "could or would do anything more with the wire than she could have done with it at home." Appellees further doubt that Bertz would have agreed to Stephan's request that he safeguard the wire for her, noting that he "was not running a storage facility for allegedly extracted wires."

¶27 Appellees' arguments about the purported implausibility of Stephan's allegations overlook the standard for granting leave to amend: a trial court must accept the truth of the allegations and permit the amendment if the amended allegations, if true, could entitle plaintiff to relief. *See Sanchez-Ravuelta v. Yavapai County*, 259 Ariz. 517, 524, ¶ 25 (2025) (recognizing that complaint should not be dismissed for failure to state a claim unless "as a matter of law plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof" (citation

modified)); *Shockley v. Moore*, 1 CA-CV 18-0326, 2019 WL 4513577 at *1, ¶ 5 (Ariz. App. Sept. 19, 2019) (mem. decision) (noting that "the same standard" that applies to review dismissal of complaint for failure to state a claim also applies when "review[ing] the denial of a proposed amendment . . . for failure to state a claim"). Appellants' contention that Stephan's account of the relevant events is improbable does not, therefore, justify denial of leave to amend. *See Jones v. Cochise County*, 218 Ariz. 372, 379, ¶ 23 (App. 2008) ("[T]he merits or facts of the controversy are not to be decided in the consideration of a motion to amend." (citation omitted)).

¶28        Relatedly, Appellees contend that leave to amend was properly denied because Stephan has presented no evidence to corroborate her allegations. "[W]ithout any independent evidence[,]" they assert, Stephan would not be entitled to relief on her "unsupported" allegation that the wire that SFOS's receptionist gave her husband  "was not the same wire" she previously entrusted to Bertz.

¶29        Because a plaintiff need not present evidence at the pleading stage, we reject Appellees' contention that leave to amend was justified by Stephan's purported failure to present "independent evidence" to corroborate her allegations. *See Steinberger v. McVey*, 234 Ariz. 125, 141, ¶ 72 (App. 2014) ("[F]actual disputes are not addressed at the pleadings stage; our review is limited to the legal sufficiency of the allegations contained in [plaintiff's] complaint.").

¶30        Appellees next argue that Stephan's proposed amendment is too vague to state a claim for relief. Noting that the amended complaint alleged that the wire was left with Bertz for "safekeeping," Appellants rhetorically ask, "What does that mean?" before labeling the allegation "so vague as to be meaningless and unenforceable[.]"

¶31        We discern no fatal vagueness in Stephan's allegation that she entrusted the wire to Bertz for safekeeping. Arizona's "notice pleading" rules do not require a plaintiff "to allege the evidentiary details of [the] plaintiff's claim for relief," *Verduzco v. American Valet*, 240 Ariz. 221, 225, ¶ 9 (App. 2016) (citation omitted), but merely to "give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008) (citation omitted). Stephan's proposed amended complaint satisfies this not-particularly-exacting standard.

¶32        In arguing that the superior court correctly denied leave to amend, Appellees rely primarily on the superior court's finding that the

proposed amendments would be futile. According to Appellees, the proposed amendments were nothing more than an attempt to circumvent the superior court's prior ruling that Stephan's "claims all sound in medical negligence" and therefore must be supported by a PEOA from a qualified medical expert.

¶33 The testimony of a qualified expert is generally required in cases "alleging medical malpractice," A.R.S. § 12-2604(A), "[u]nless [the] malpractice is grossly apparent," *Rasor v. Northwest Hosp., LLC*, 243 Ariz. 160, 163, ¶ 12 (2017). If expert testimony is needed to establish medical negligence, Section 12-2603(B) requires the plaintiff to serve the affidavit of a qualified expert to support her claim that the defendant breached the applicable standard of care, injuring the plaintiff. *Id.* at ¶¶ 12-14.

¶34 But not all claims against medical professionals constitute malpractice claims. Instead, a "cause of action for medical malpractice" is one that arises out of negligence, misconduct, or other deficiencies "in the rendering of health care, medical services, nursing services or other health-related services[.]" A.R.S. § 12-561(2). Claims unrelated to the rendering of health-related services fall outside this definition. *Bernardo v. Windsor Palm Valley LLC*, 1 CA-CV 19-0197, 2020 WL 428748 at *3, ¶ 17 (Ariz. App. Jan. 28, 2020) (mem. decision) ("A claim for ordinary negligence does not transform into an action for medical malpractice just because the defendant is a health care provider."). As this Court long ago noted, for example, a hospital may be liable for "a patient's slip and fall in a hospital hallway," which has "nothing to do with the rendering of medical or health care-related services." *Jeter*, 211 Ariz. at 404, ¶ 80; *see also Bernardo*, 2020 WL 428748 at *3, ¶ 17 ("A slip-and-fall lawsuit does not morph into a medical malpractice action when the fall happens at a nursing home rather than a supermarket."). A claim is not one for medical malpractice, in other words, unless resolving the claim would require the trier-of-fact to determine whether a health care provider's exercise of professional judgment fell below the standard of reasonable medical care. *See Bell v. Maricopa Med. Ctr.*, 157 Ariz. 192, 194 (App. 1988) ("In [ordinary negligence] cases, it is not necessary for the plaintiff to present evidence to establish the standard of care because the jury can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances."). Here, Stephan's amended claims do not allege that Bertz took possession of the wire for reasons related to any medical treatment he rendered. Stephan's amended claims are not, therefore, claims for medical malpractice under Section 12-561(2). And because they are not claims for medical malpractice, Stephan was not required to provide a PEOA to support them. *See Bernardo*, 2020 WL 428748 at *4, ¶ 20 ("Plaintiffs required no expert witnesses under

A.R.S. § 12-2603 to establish a professional standard of care for a routine, non-medical negligence claim[.]").

¶35        Case law from jurisdictions with statutes similar to Section 12-2603 recognize that claims are not subject to statutory expert affidavit requirements merely because they arise out of a doctor-patient relationship. *See, e.g.*, *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 504 (S.C. 2014) (claim by patient who fell while walking in hospital "sounds in ordinary negligence" and so was not subject to statutory expert affidavit requirement; statutory requirement applies only when "the medical professional acts in his professional capacity" when "providing medical services to a patient"); *J.J. by and through C.W. v. Poplar Bluff Reg'l Med. Ctr., LLC.*, 675 S.W.3d 259, 265 (Mo. App. 2023) (claim by former inpatient arising out of an employee's disclosure of his confidential personal information was not subject to statutory expert affidavit requirement; an expert affidavit is required "only . . . when the injury resulted from the health care provider's rendering of or failure to render a service that involved professional medical judgment"); *Univ. of Miami v. Bloomer*, 337 So.3d 838, 840 (Fla. App. 2022) (claim by patient for injuries sustained when "a surgical table collapsed underneath him" was "ordinary negligence" claim, and so was not subject to statutory expert affidavit requirement, because patient "allege[d] no action or inaction resulting from medical judgment or skill"); *Mooney v. Graham Hosp. Ass'n*, 513 N.E.2d 633, 637 (Ill. App. 1987) (claim against hospital by patient who slipped and fell was one of ordinary negligence and so was not subject to statutory expert affidavit requirement). We find these cases instructive.

¶36        Bertz next asserts that Stephan's claims arise out of his rendering of medical services because the wire became part of her medical records as a matter of law. He explains this assertion by noting that, by her own admission, Stephan brought the wire to a medical appointment with Bertz and discussed it with him. The wire, he maintains, thus fits within the statutory definition of "medical records" as a "communication" between a doctor and patient on a matter "related to a patient's physical or mental health or condition[.]" A.R.S. § 12-2291(6). Because the wire was part of her medical records, Bertz concludes, her claim that he improperly lost or withheld it constitutes a claim for medical negligence under Section 12-561(2) based on the improper maintaining of medical records.

¶37        But the term "medical records" does not, as Bertz suggests, include all communications between a doctor and patient related to the patient's health. Instead, to fall within the statutory definition, such communications must be "recorded" in some "form or medium" and then

"maintained for purposes of patient diagnosis and treatment[.]" A.R.S. § 12-2291(6). Stephan's proposed amended complaint expressly alleged that the wire was her personal property that Bertz agreed to safeguard for purposes unrelated to diagnosis or treatment. This allegation, if true, would establish that the wire was not a "medical record" as the term is statutorily defined. *See id.*; *see also Catrone v. Miles*, 215 Ariz. 446, 452, ¶¶ 14-15 (App. 2007) (holding that medical records privilege did not shield special education student's school records "in their entirety" because "much of the special education records" were maintained for purposes unrelated to diagnosis and treatment). The court could not properly draw inferences and conclusions contrary to the facts alleged in Stephan's proposed amended complaint when considering her request for leave to amend. *See Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012) ("In determining if a complaint states a claim on which relief can be granted, courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences form those facts[.]").

¶38 Appellees maintain that Stephan conceded, in her original complaint, that this case arises out of Bertz's provision of medical services, and that Stephan is now bound by that concession. Appellees base their argument on language in the original complaint alleging that Stephan gave the wire to Bertz for safekeeping "as part of her medical records." According to Appellees, the original complaint's allegation that the wire became "part of her medical records" constitutes an admission that Stephan's claims allege improper management of her medical records, and thus her claim is one for medical malpractice. Appellees acknowledge that Stephan's proposed amendment eliminated any reference to the wire being "part of her medical records," but insist that the allegation in the original complaint constitutes a binding judicial admission that cannot be withdrawn by amendment.

¶39 Appellees' argument is unpersuasive. Rule 15 empowers courts to grant leave to amend pleadings, and directs them to use that authority "liberally." To adopt Appellees' argument that an allegation in Stephan's original complaint constitutes a binding admission that cannot be amended would render Rule 15 meaningless. And if leave to amend had been granted, the "part of her medical records" allegation in the original complaint would be of no effect. *Francini v. Phoenix Newspapers, Inc.*, 188 Ariz. 576, 586 (App. 1996) (holding that plaintiff's "amended complaint . . . supersede[d] the original complaint," and therefore "representations made by [plaintiff] in his original complaint . . . do not bind him").

¶40 Moreover, the allegation in the original complaint that the wire became "part of her medical records" was not an allegation of fact but, at least in part, a legal conclusion. Whether the wire became part of Stephan's medical records, in other words, turns on whether the wire fits within the statutory definition. *See* A.R.S. § 12-2291(6). Because the allegation that the wire became "part of her medical records" was not an allegation of fact, it would not bind Stephan even if left unamended; parties are not, after all, bound by allegations in pleadings on questions of law. *Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 41, ¶ 36 (App. 2012) (noting that "[j]udicial estoppel . . . does not extend to inconsistent opinions or legal positions" (citations omitted)); *see also Cook v. Cook*, 209 Ariz. 487, 496, ¶ 32 n.9 (App. 2005) (rejecting wife's argument that husband conceded validity of marriage by petitioning for "dissolution of the marriage" and was therefore estopped from arguing that the marriage was void; "Parties cannot stipulate as to the law applicable to a given state of facts and bind the court." (citation omitted)).

¶41 Appellees raise a variety of other arguments to support their position that the denial of leave to amend should be affirmed. Relying on a recent unpunished decision of this Court, for example, Appellants assert that Stephan's conversion claim fails as a matter of law because medical records do not constitute the "chattel" necessary to establish such a claim. *See Andrich v. Banner Univ. Med. Ctr.*, No. 1 CA-CV 22-0013, 2022 WL 16753311 at *3, ¶ 12 (Ariz. App. Nov. 8, 2022) (mem. decision) ("[M]edical records cannot be considered chattel" because they "could not be traded or sold for any value."). Similarly, they rely on Section 12-562(C) in arguing that Stephan's breach-of-bailment claim fails as a matter of law because Stephan has not alleged that the bailment contract was in writing. *See* A.R.S. § 12-562(C) ("A medical malpractice action based upon breach of contract for professional services shall not be brought unless such contract is in writing."). All of these arguments are premised on Appellees' contention that the wire was part of Stephan's medical records and that her claims sound in medical negligence. Because we reject this premise, *see supra* ¶¶ 32-40, we likewise reject these arguments.

¶42 The proposed amended complaint alleged that Bertz agreed to Stephan's request that he safeguard the wire, and that he failed to do so. The proposed amended complaint does not allege that Bertz took possession of the wire in connection with his rendering of medical services, nor does it allege that any action or omission by Bertz related to his exercise of medical judgment. We hold, therefore, that the allegations in the proposed amended complaint need not be supported by the testimony of a

medical expert. Denial of leave to amend cannot, therefore, be affirmed based on Stephan's failure to support her claims with a PEOA.

**¶43** We hold that Stephan's proposed amended complaint stated potentially viable claims for relief, and therefore that the denial of leave to amend was in error. *See Stauffer v. Premier Service Mortg., LLC*, 240 Ariz. 575, 577-78, ¶ 9 (App. 2016) (noting that court should not dismiss complaint for failure to state a claim "unless certain that plaintiffs can prove no set of facts that will entitle them to relief" (citation modified)).

**¶44** Stephan also alleges that the court erred in dismissing her original complaint and in awarding attorney fees. Because we vacate the dismissal of her request for leave to amend, we find it unnecessary to address these arguments. Instead, we vacate the denial of the leave to amend and remand for further proceedings consistent with this decision.

## CONCLUSION

**¶45** We vacate the superior court's denial of leave to amend and remand for further proceedings consistent with this decision. Stephan may recover costs on appeal upon compliance with ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR